[No. 15494.  Department Two.  January 9, 1920.]

## FIRST STATE BANK OF BINFORD, *Respondent*, v. OTTO G. ARNESON *et al., Appellants.*[1]

EVIDENCE (76).—BEST AND SECONDARY—LOSS OF PRIMARY EVIDENCE. Upon proof that a written instrument agreeing to assume a mortgage had been executed and that it was lost, oral proof of its contents is admissible.

MORTGAGES (102)—ASSUMPTION OF DEBT. The purchaser of mort- gaged premises who assumes payment of the mortgage becomes the principal debtor and the mortgagor a surety only.

SAME (92)—RIGHTS OF ASSIGNEE—HOLDER OF COUPONS. An agent for the collection of mortgage notes who advanced and paid the amount due is entitled to recover the amount from a grantee who had assumed and agreed to pay the mortgage debt.

SAME (111) — TRANSFER OF PROPERTY—MERGER—EXTINGUISHMENT OF DEBT. A bank holding interest coupon notes as collateral security for the obligation of its cashier who had unlawfully appropriated money to pay the mortgage, in taking a deed of the mortgaged premises in which it assumed and agreed to pay the mortgage debt thereby becomes the principal debtor, and extinguished the debt of the cashier.

PLEDGES (7)—WAIVER—SALE OF COLLATERAL WITHOUT NOTICE. A bank, holding interest coupons secured by mortgage as collateral security for the debt of its cashier for appropriating money to their payment, will be presumed to have realized the amount due where it disposed of the collateral without notice to the debtor.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered January 30, 1919, upon findings in favor of the plaintiff, in an action for conversion, tried to the court.  Reversed.

*Danielson & Ryan,* for appellants.

*Oscar Cain,* for respondent.

TOLMAN, J.—For some years prior to January 31, 1916, appellant Arneson had been the cashier of respondent bank, at Binford, North Dakota.  At the an-

[1]Reported in 186 Pac. 889.

nual meeting in January, 1916, another was elected to succeed him, and thereafter for a short time he remained in charge until his successor should arrive and become familiar with the affairs of the bank.

Previous to this, appellants had been the owners of a tract of 320 acres of farm land, upon which they had given a first mortgage of $4,000 to the Capital Trust Company and a second mortgage for a like sum to one Tallmadge, who was the vice-president of the respondent bank, but a nonresident. The interest coupons of both of these mortgages were payable at the respondent bank. After the execution and delivery of these mortgages, the appellants sold and conveyed the land by quitclaim deed to one Hancher, who, by a separate instrument in writing, assumed and agreed to pay both mortgages, principal and interest.

No part of the principal of either mortgage had been paid on January 31, 1916, and on that day there was in the respondent bank for collection the interest coupon due on January 1, 1916, on the first mortgage, for $242 and accrued interest, and the interest coupon due February 1, 1916, on the second mortgage, for $320, both coupons being signed by appellants as makers. On that day Arneson, being still in charge of the bank pending the arrival of his successor as cashier, paid both of these coupons with the money of the bank, and deposited the uncancelled coupons in the drawer or till as cash items to balance the total amount of $563.61, which he had remitted to the payees on the interest coupons.

On February 10, 1916, the new cashier found the coupons being carried as cash, and had some conversation with Arneson regarding them. Both Arneson and his successor as cashier appear to have made unsuccessful efforts to induce Hancher to pay these coupons, and still later the bank appears to have induced

Hancher and a grantee to whom Hancher had in the meantime conveyed, in consideration of $200 then paid by the bank, to convey the mortgaged lands to the bank, and by the deed of conveyance to it, the bank assumed and agreed to pay both mortgages. Whether, in thus procuring title, the bank was acting solely as the holder of these coupon notes, or in part in the interest of its vice-president, who held the second mortgage, does not appear.

This action was brought in August, 1918, the complaint being framed upon the theory that Arneson had unlawfully and without the consent of the officers of the bank converted to his own use the sum by him remitted to the payee of the coupon interest notes as above stated. The answer, after denying such conversion, alleges in some detail the facts already recited, and alleges a custom of the respondent bank to remit in payment of interest notes sent it for collection on loans made through it, when the same became due, whether paid or not; and in effect alleges that the bank had, by assuming and agreeing to pay both mortgages, made the debt represented by these interest coupons its own.

From a judgment against them in the full amount prayed for, the appellants bring the cause here for review on appeal. Seventeen different assignments of error are made, raising many questions upon the rejection of evidence offered and refusal to make findings asked by appellants, but as we view the matter in issue, after carefully reading all the record, it will be unnecessary to discuss these assignments in detail.

Appellants admit that the money of the bank was used to pay the holders of the coupons; that there was no specific authority therefor from the directors or from any officer of the bank, and the only defense

pleaded that there was any real attempt to sustain is that the bank had assumed, and had thus become bound to pay, the amount represented by these interest coupons.

The trial court, after the proof of the loss of the written instrument by which Hancher assumed and agreed to pay the mortgages, admitted oral evidence of the contents of the lost instrument, and afterwards, on motion, struck out the evidence thus admitted. There being competent evidence that such an instrument had been executed and delivered, that due search had been made, and that it could not be found at the time of the trial, oral evidence as to its contents was properly admitted, and it was error afterwards to strike out such evidence. In the trial *de novo* here, such evidence appearing in the record, will be considered.

It appears then that, by the agreement referred to, Hancher had assumed the payment of both mortgages, and as between himself and the appellants, Hancher thus became the principal debtor, and appellants became sureties only. Therefore, when Arneson paid the coupons, no matter whose money he used, he became entitled to recover the amount paid from Hancher, and might have maintained an action at law for that purpose; or, in the event of subsequent foreclosure action, might have intervened and obtained a judgment against Hancher for the amount paid and established his right of lien on the mortgaged land, by reason of the coupons being secured by the mortgage. Likewise the bank, then holding the coupons as collateral to secure the payment of Arneson's debt to it, might have pursued the same remedies against Hancher. This being so, it follows that, when the bank accepted the deed to the mortgaged premises from Hancher, by the terms of which it assumed and agreed to pay the mort-

gages, knowing that, as against Hancher, these coupons were still unpaid and were a part of the debts secured by the mortgages and that Hancher was liable thereon, it thereby became the principal debtor as between itself and Hancher; and had Arneson pursued his remedies against Hancher, the latter could in turn have pursued like remedies against the bank. Therefore, the duty to pay and the right to receive being both vested in one person at the same time, in the absence of the rights of third parties, or other rights which equity will preserve, the one offsets and balances the other, and the obligation was thus extinguished.

Our first thought was that, in procuring title to the mortgaged premises, the bank might have been simply preserving its collateral security for the debt which Arneson owed it, which, of course, it had a right to do; but it appears here, by a certified copy of a deed offered by appellants, and erroneously rejected by the trial court, that the bank in 1918, a short time before the beginning of this action, sold and by deed conveyed the mortgaged lands. Therefore, if the coupons and the interest in the mortgaged land which they carried be considered as collateral security for the debt incurred by Arneson, as alleged in the complaint, then the bank, by selling and disposing absolutely of such collateral without notice to the debtor, will be presumed to have thus realized the amount due it from him, unless it affirmatively appears otherwise. *Gilliam v. Davis,* 7 Wash. 332, 35 Pac. 69, and authorities there cited.

•For the reasons stated, the judgment of the trial court will be reversed, with directions to enter a judgment in favor of the appellants.

HOLCOMB, C. J., MOUNT, BRIDGES, and FULLERTON, JJ., concur.