## PUGET SOUND POWER & LIGHT CO. v. CITY OF SEATTLE et al.

(Circuit Court of Appeals, Ninth Circuit. April 13, 1925. Petition for Rehearing Denied May 18, 1925.)

No. 4340.

1. **Equity ⬅299—Filing of supplemental bill not a waiver of error in ruling on original bill.**

The filing of a supplemental bill, the office of which is to bring before the court matters arising after the filing of the original bill or not then known to complainant, is not a waiver of error in a previous ruling dismissing the original bill.

2. **Appeal and error ⬅154(1)—Payment of taxes after decree dismissing bill to require their collection from another held not to prevent appeal therefrom.**

The payment of taxes by a property owner, under protest, after entry of a decree dismissing a suit to require their collection from the property taxed, *held* not to end the controversy and entitle defendants to dismissal of an appeal therefrom.

3. **Street railroads ⬅13—Contract by city to pay taxes on railway property purchased held valid.**

The contract under which the city of Seattle purchased complainant's street railway lines having been held valid by the Supreme Court of the state prior to its consummation, a provision thereof, also embodied in the deed and bill of sale which the city accepted, by which it agreed, as part of the consideration, to pay a specified portion of the taxes assessed against the property for the then current year 1919, *held* to create a valid and enforceable obligation.

4. **Street railroads ⬅13—City held subject to suit to enforce contract to pay taxes.**

Where a city, as part consideration for property purchased, contracted to pay a specified portion of the taxes assessed against it prior to its conveyance, as between itself and the seller, it became primarily liable for such taxes, and the seller a mere surety, with the right before payment of the taxes, to maintain a suit in equity to compel their payment by the city.

5. **Taxation ⬅531(2)—Surety compelled to pay taxes held subrogated to tax lien.**

A seller of property, compelled to pay taxes assessed against it which the purchaser

contracted to pay, to prevent a sale of its other property, *held* entitled to subrogation in equity to the tax lien on the property.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

In Equity. Suit by the Puget Sound Power & Light Company against the City of Seattle, the County of King, W. W. Shields, as Treasurer of King County, and Matt W. Starwich as Sheriff of King County. Decree for defendants, and complainant appeals. Reversed as to defendant City of Seattle, and affirmed as to other defendants.

For opinions below, see 300 F. 441, 443.

James B. Howe, Hugh A. Tait, and Edgar L. Crider, all of Seattle, Wash., for appellant.

Thomas J. L. Kennedy and Geo. A. Meagher, both of Seattle, Wash., for appellee City of Seattle.

Ewing D. Colvin and Howard A. Hanson, both of Seattle, Wash., for appellees County of King, W. W. Shields, and Matt Starwich.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. On and prior to December 31, 1918, the Puget Sound Power & Light Company, hereinafter referred to as the company, was the owner of a street railway system in the city of Seattle. On the above date the city enacted Ordinances Nos. 39025 and 39069 with a view of purchasing and acquiring the street railway system. The first ordinance authorized a bond issue in the sum of $15,000,000 to pay for the property, and the second prescribed the terms and conditions of the contract of purchase including the form of the contract itself. The contract, as prescribed by ordinance, contained the following recitals and provisions, among others:

"For and in consideration of the covenants and agreements hereinafter contained, and the considerations hereinafter expressed, the company agrees to sell to the city and the city agrees to buy the property for the sum of fifteen million dollars ($15,000,000) in utility bonds, authorized by said Ordinance No. 39025, payment to be made in the manner and subject to the terms and conditions hereinafter expressed."

"That state, county and municipal taxes levied against the property for the year 1919 shall be paid, before the same shall become delinquent, by the respective parties hereto, in amounts proportional to the respective periods of time that said parties are respectively in possession of said property during the year 1919."

It was further provided that in case the agreement or any provision thereof, the ordinance authorizing the agreement or any provision thereof, or the ordinance providing for the issuance of utility bonds or any provision thereof, should be declared invalid by the courts on appeal, the agreement should cease and terminate forthwith, unless the invalidity could be corrected by the passage of appropriate legislation at the 1919 session of the state Legislature, or, in a proper case, by the passage of appropriate ordinances by the city council of the city of Seattle, within 60 days after the decision on appeal. Soon after the enactment of this ordinance, an action was commenced in the state court by a taxpayer of the city against the city and the company to enjoin the city and company from entering into the contract for the purchase of the street railway system as authorized by ordinance. Other taxpayers intervened, and upon final hearing the court dismissed the complaint. An appeal was taken to the Supreme Court of the state, where the judgment was affirmed by an opinion under date of March 5, 1919. Twichell v. Seattle, 106 Wash. 32, 179 P. 127. On March 31, 1919, the company conveyed the street railway system to the city by deed and bill of sale, each containing the following provision:

"It is also further agreed between the parties hereto that if at the time of the delivery of this deed any lien shall have attached to the property or any part thereof, for the year 1919, for any tax for the year 1919, such lien shall not constitute a breach of warranty and that if such tax shall become collectible the same shall be paid before the same shall become delinquent by the respective parties hereto in the amounts proportionate to the respective periods of time that said parties are respectively in possession of said property during the year 1919."

In the meantime, on March 15, 1919, the State Tax Commissioner of the state assessed the street railway property as personal property for the purposes of taxation for the year 1919. This was the earliest date at which the street railway property had ever been assessed during the existence of the office of State Tax Commissioner. Pursuant to this assessment, the county commissioners of King county, in which the property was situate, levied taxes for state, county, school district, and city purposes, amounting to approximately $400,000. The company then

instituted suit against King county and the city, in the state court, attacking the validity of the assessment and the taxes levied pursuant thereto. It prayed in its complaint that if the taxes should be held valid the city should be required to pay its portion and the company its portion in accordance with the contract between the parties. The city filed a cross-complaint against the company and the county. In the cross-complaint it pleaded the contract for the purchase of the property and the provision of the contract in respect to the payment of taxes, also the execution of the deed delivered by the company and accepted by the city, and its provision in respect to taxes, and alleged that, if the taxes should be held valid, the city was obligated to pay three-fourths and the company one-fourth thereof, and prayed that a decree be entered accordingly. The Supreme Court of the state upheld the validity of the taxes but made no adjudication as to an apportionment between the company and the city. Puget Sound P. & L. Co. v. Seattle, 117 Wash. 351, 201 P. 449, 207 P. 689. After the rendition of this decision the company requested the city to join in paying the taxes under protest, but the city made no response. The company and the city then joined in a writ of error from the Supreme Court of the United States to review and reverse the decree of the Supreme Court of the State, but the decree of the Supreme Court of the state was affirmed. Puget Sound Co. v. King County, 264 U. S. 22, 44 S. Ct. 261, 68 L. Ed. 541. The county treasurer of King county then made demand upon the company for the payment of all such taxes with interest at the rate of 15 per cent. per annum from March 15, 1920. The company again requested the city to join in making payment, but the city again refused. The company then offered to pay its share of the taxes, either to the city, to be used by the city in making payment of the full amount of the taxes, or to pay its share of the taxes to the county treasurer. The county treasurer refused to accept from the company any portion of the taxes less than the whole and notified the company that unless the taxes were paid before a day certain he would issue a warrant of distress therefor. The company notified the treasurer that the street railway property was subject to a specific lien for the taxes, that the taxes could be realized by resorting to the street railway property, and that the county treasurer had no right to proceed against other property of the company not subject to the specific lien. The county treasurer then issued a warrant of distress to the sheriff of King county. The sheriff demanded full payment of all taxes from the company with interest and costs. He refused to accept the offer of the company to pay the state, county, and school district taxes, with interest and costs, unless the company would also pay the city taxes with interest and costs. He likewise refused to proceed against the street railway property, subject to the specific lien of the taxes, in order to collect such taxes, but on the contrary levied upon other property of the company upon which all taxes due had already been paid, and advertised the same for sale to satisfy the claim for taxes on the street railway property for the year in question.

On the foregoing facts the company filed its bill of complaint in the court below against the city, the county, the county treasurer, and the sheriff, praying for an injunction restraining the city from breaching its contract to pay the taxes to the taxing officers of the county, and restraining the taxing officers of the county from imposing a lien upon property of the company which was not subject to the lien of the taxes, and requiring such officers to collect the taxes out of the property subject to the lien, and for other and general relief. A motion to dismiss was interposed by the city and a like motion by the county and its officers. Speaking generally, the grounds of the motions were that the bill of complaint did not state facts sufficient to constitute a cause of action in equity; that the court had no jurisdiction of the subject-matter of the action; that the company had a plain, speedy, and adequate remedy at law; that there was a misjoinder of parties; and that the bill of complaint was multifarious. The case came on for hearing on the motion for a temporary restraining order and on the motions to dismiss. The motion for a temporary restraining order was denied. The motions to dismiss were granted for the reasons that the bill of complaint was multifarious, in that the relief sought against the county and its officers was equitable, whereas the relief sought against the city was based on contract and therefore legal; that the court was without jurisdiction to restrain the county officers from collecting the taxes; and that the company had a plain, speedy, and adequate remedy at law.

Thereafter the company filed an amended and supplemental bill of complaint against the city alone, alleging, among other things, that the company and the Old Colony Trust Company, mortgagee trustee, had paid in

full the taxes upon the street railway property for the year 1919, with interest and costs, in order to save and protect the other property of the company levied upon by the sheriff under and by virtue of the distress warrant, and asked, in addition to the other relief sought, that the company be subrogated to the lien of the taxes on the street railway property. Upon the filing of the amended and supplemental bill of complaint against the city, a decree was entered dismissing the original bill of complaint as against the county and its officers. A motion was then interposed by the city to dismiss the amended and supplemental bill of complaint, and the motion was granted on the ground that the company had a plain, speedy, and adequate remedy at law. A final decree was thereupon entered dismissing the amended and supplemental bill of complaint against the city, but without prejudice to the right of the company to proceed at law.

The county and its officers have interposed a motion to dismiss the appeal upon two grounds: First, because the payment of the taxes leaves no subject of controversy between the company and these appellees; and, second, because the filing of the amended and supplemental bill of complaint constituted a waiver of any error in the ruling on the motion to dismiss the original bill of complaint. We will consider the second objection first.

[1, 2] No doubt, as a general rule, the filing of an amended complaint after a ruling on motion or demurrer to the original complaint is a waiver of any error in the ruling on the original complaint because the amended complaint supersedes the original complaint for all purposes. But this is not true of a supplemental pleading. The office of the latter is to bring before the court matters occurring after the filing of the original complaint or not then known to the party, and the only necessary parties to the supplemental complaint are those who may be affected thereby. The question before the court, therefore, turns upon the question whether the amended and supplemental complaint here was an amended bill of complaint or a supplemental one only. We confess, an inspection of the pleading would lead one to the former conclusion because the new pleading sets forth everything contained in the old one and some new and additional matter besides. But there is little in a name, and under the liberal rules now prevailing, we are not inclined to hold, contrary to the apparent intention of the company, that the new pleading superseded the old one

for all purposes. As will presently appear, a decision of that question is not very material to the final disposition of the question now before the court. Nor do we think that the payment of the taxes necessarily ended the controversy so far as the county and its officers are concerned, because the company is still at liberty to claim relief as against them notwithstanding the payment of the taxes. Whether it is entitled to any such relief is, of course, a question to be determined upon the appeal. The motion to dismiss is therefore denied.

[3, 4] The first question for consideration is: Was there a valid obligation on the part of the city to pay three-fourths of the taxes in question? We find no difficulty in solving that question. The city undeniably agreed to pay its proportionate share of the taxes on the street railway property for the year 1919 as a part of the consideration for the purchase of the system. This was one of the express provisions of the contract embodied in the ordinance authorizing the purchase. The city further agreed that if the ordinances or any provision thereof, or the contract or any provision thereof, were declared invalid by the courts on appeal, the contract would immediately cease and terminate, unless the invalidity could be corrected and validated by appropriate legislation. The Supreme Court of the state sustained the ordinances and the contract, and each and every provision thereof, in subsequent litigation with reference to which the parties contracted. This was the construction placed upon the decision of the Supreme Court by the city and its officers, for immediately thereafter the city accepted a conveyance of the property subject to its proportionate share of the taxes which it assumed and promised to pay. In subsequent litigation the city again asserted its obligation to pay three-fourths of the taxes, if valid, and there was no repudiation or denial of this obligation until the validity of the taxes was placed beyond further question by the final decision of the Supreme Court of the United States. And in holding that the obligation on the part of the city to pay a part of the taxes was a valid one, we do not find it necessary to rest our decision upon any ground of estoppel. The Supreme Court of the state held that the city council of the city had authority to make the purchase of the system without being first authorized so to do by a vote of the people, and if the city counsel had authority to bind the city as to one part of the consideration, it had the same authority to bind it as to every other part of the

consideration. Whether this obligation was a general one, or merely an obligation to pay from the revenues of the system, we need not inquire, as that question does not arise at the present stage of the proceedings. The city, by reason of its contract of purchase and the acceptance of conveyances containing an agreement on its part to pay its proportionate share of the taxes, became primarily obligated to pay such proportionate share as between itself and the company, and for that portion of the taxes the city became the principal debtor and the company a mere surety. Solicitors' Loan & Trust Co. v. Robins, 14 Wash. 507, 45 P. 39; University State Bank v. Steeves, 85 Wash. 55, 60, 147 P. 645, 2 A. L. R. 237; First State Bank of Binford v. Arneson, 109 Wash. 346, 186 P. 889; Union Mutual Life Insurance Co. v. Hanford, 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118. And, if the company was a surety only, its right to file a bill in equity, before paying the debt, to compel the principal to discharge the obligation, does not admit of question.

"After the debt for which a surety or guarantor is liable has become due, he may, without paying the debt and without being called upon by the creditor, file a bill in equity to compel the principal to pay the debt, it being unreasonable that a surety or guarantor should always have a cloud hanging over him, ever though not molested for the debt. This principle is universally recognized, and has been applied to a great variety of circumstances." Brandt, Suretyship Guaranty, § 245.

"A court of equity has jurisdiction to compel the principal to exonerate the surety or guarantor at the maturity of the debt, and it is not necessary that the promisor first pay any part of the debt himself, but the principal debtor who is ultimately bound for the debt may be required to discharge his obligation.

"This is an application of the same principle of equity whereby a surety at the suit of his cosurety may be required by a decree in equity to pay his contributory share to the creditor." Stearns on Suretyship, § 281.

"No principle of equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has became due, without paying, or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby." Thomas v. St. Paul's M. E. Church, 86 Ala. 140, 5 So. 508.

For these reasons we are of opinion that the original bill of complaint stated a cause of action against the city and that cause of action was cognizable in equity. Nor was there any misjoinder of parties or of causes of action. The relief sought against the the county and its officers was merely incidental to the relief sought against the city. Whether the company was entitled to that relief or not we need not now inquire. Suffice it to say the company simply claimed that it was the duty of the county officers to proceed against the property primarily liable for the tax before resorting to the property of the company and it sought by injunction to compel them to discharge that duty. It was not a suit to enjoin the payment of a tax, and was in no sense a suit against the state. Clifford v. Miller (C. C. A.) 288 F. 537.

[5] This brings us to the amended and supplemental bill of complaint. As already stated, it is there averred that the company and its trustee mortgagee were compelled to pay the taxes on the street railway property in order to protect other property belonging to the company, and the company asked to be subrogated to the lien of the taxes. To this relief, in our opinion, it was entitled. In Murray v. O'Brien, 56 Wash. 361, 105 P. 840, 28 L. R. A. 998, the Supreme Court of the state, after quoting from Cottrell's Appeal, 23 Pa. 294: "Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract or privity of any kind exists between the parties. Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor," and from Chief Justice Marshall in Lidderdale v. Robertson, Adm'r, 15 Fed. Cas. No. 8,337: "When a purchaser has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged"—said: "The right of subrogation under the better rule applies in cases where a party who has an interest in the property and who does not stand as a mere volunteer pays a debt owing in whole or in part by another, to protect his own rights or to save his own property. The remedy is no longer limited to sureties and quasi sureties, but is freely applied by courts of equity in all cases where good conscience

and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another."

The decree dismissing the original and supplemental bills of complaint against the city is therefore erroneous. In view of the payment of the taxes, the company does not suggest that it is entitled to any relief as against the county or its officers, aside from subrogation to the tax lien; nor do we think that it is entitled to any further relief as against them.

The decree is therefore reversed as to the city of Seattle and affirmed as to the other appellees, and the case is remanded to the court below for further proceedings in accordance herewith.