[No. 22040. Department One. February 6, 1930.]

FEDERAL LAND BANK OF SPOKANE, *Respondent,* v. E. A. MILLER *et al., Appellants.*[1]

[1]Reported in 284 Pac. 751.

M. M. *Moulton* and *Charles L. Powell,* for appellants.

R. J. *Venables* and *Henry R. Newton,* for respondent.

PARKER, J.—The plaintiff bank commenced this action in the superior court for Benton county seeking recovery of a personal judgment against the defendants W. E. Bechtold and wife upon a promissory note and covenants in a mortgage upon their land, given to secure the note, both of which were executed and delivered by them to the bank; and also against defendants Miller and wife upon covenants in the mortgage which they assumed and agreed to perform, upon accepting conveyance of the land to them from Bechtold and wife. A trial upon the merits in that court, sitting without a jury, resulted in findings and judgment awarding to the bank recovery as prayed for, from which the defendants Miller and wife have appealed to this court.

The case is before us for disposition upon the facts as found by the trial court, which may be summarized, so far as need be here noticed, as follows: In September, 1917, the bank loaned to Bechtold and wife the sum of $3,900, which indebtedness was then evidenced by their executing and delivering to the bank their promissory note payable in semiannual installments, with interest. That indebtedness and security therefor was further evidenced by their executing and delivering to the bank a mortgage upon their forty-acre farm,

situated in Benton county. The mortgage contained, among other provisions, the following:

"And each of the mortgagors further covenants and agrees:

"To pay all debts and moneys secured hereby, when from any cause the same shall become due;

"Not to permit or suffer any tax, assessment, or other lien or incumbrance prior to the lien of this mortgage, to exist at any time against said premises."

The language of the mortgage specifies the indebtedness with reasonable certainty, reading it apart from the note, though the note is referred to therein. The mortgage was duly recorded in the office of the auditor of Benton county. Thereafter, on December 15, 1919,

"W. E. Bechtold and Frances Bechtold, his wife, made, executed, acknowledged and delivered to E. A. Miller a deed to said property. That said deed provided that the conveyance to E. A. Miller was made 'subject to all taxes and assessments of every kind and nature which may be lawfully levied and assessed against said premises now due or thereafter due except the 1918 taxes and subject to one mortgage in favor of The Federal Land Bank of Spokane, Washington; which mortgage, together with assessments, the said second party hereby agrees to assume and pay.' That the defendant, E. A. Miller, accepted said deed and recorded same in the office of the auditor of Benton county, Washington, in Book 46 of Deeds, page 558; that E. A. Miller, in accepting said deed, was acting for and on behalf of the community composed of E. A. Miller and wife."

Thereafter, taxes against the property becoming delinquent and permitted by Bechtold and wife and Miller and wife to remain unpaid, Benton county instituted an action in its superior court to foreclose the lien of such taxes, in which action such proceedings were duly had that a decree of foreclosure was rendered in accordance with which the county became the

purchaser, and in due course the treasurer of the county duly executed a deed therefor to the county, which deed was duly recorded in the office of the auditor of the county; thus rendering the property no longer subject to the lien of the mortgage given by Bechtold and wife to the bank.

The county thus becoming the owner of the property, freed from the mortgage lien, it thereafter, in due course, sold and conveyed the property to one Newcomb, proceeding regularly in that behalf as prescribed by the statute for the sale and disposition by the county of such acquired property. This purchase of the property by Newcomb was made with money furnished him by the bank, and it thereby, we shall assume, became the equitable owner of the property. On July 10, 1928, there being default in payment of several of the matured installments of the indebtedness evidenced and secured by the mortgage, and in the performance of other covenants in the mortgage to be performed by the mortgagors Bechtold and wife and assumed and agreed to be performed by their grantees, Miller and wife, which entitled the bank to then recover the whole of the unpaid indebtedness, the bank then commenced this action seeking recovery as above noticed.

Let us remember, as we proceed, that the personal obligation of Bechtold and wife to the bank for the payment of the indebtedness was evidenced not only by the note, but was also evidenced by their express covenant in the mortgage "to pay all debts and moneys secured hereby." It is, we think, well settled law that such a covenant in a mortgage is as effectual as a promise creating a personal obligation of the promisor made in any other writing signed by the promisor. See 41 C. J. 394, and authorities there cited.

It seems equally plain that Miller, in legal effect, assumed, as a personal obligation of himself and

his community, payment of the debt evidenced by the mortgage, by the acceptance of the deed from Bechtold and wife, the mortgagors, wherein it was recited, "which mortgage . . . the said second party [Miller] hereby agrees to assume and pay." *Solicitors' Loan & Trust Co. v. Robins,* 14 Wash. 507, 45 Pac. 39; *Harbican v. Chamberlin,* 82 Wash. 556, 144 Pac. 717; *Corkrell v. Poe,* 100 Wash. 625, 171 Pac. 522, 12 A. L. R. 1524; *First State Bank of Binford v. Arneson,* 109 Wash. 346, 186 Pac. 889; *Insley v. Webb,* 122 Wash. 98, 209 Pac. 1093, 19 R. C. L. 380. In the text of 3 Pomeroy's Equity Jurisprudence (4th ed.), § 1207, we read:

"The ground of the grantee's liability adopted by the courts of a large majority of the states is that of contract. It is an application of the general doctrine, so widely prevailing in this country that it may properly be called an American doctrine,—where A makes a promise directly to B, for the benefit of C, upon a consideration moving alone from B, C, being the party beneficially interested, may treat the promise as though made to himself, and may maintain an action at law upon it in his own name against A, the promisor. According to this generally accepted view, the liability of the grantee who thus assumes the payment of an outstanding mortgage does not depend upon any extension of the equitable doctrine concerning subrogation; it is strictly legal, arising out of a contract binding at law; the mortgagee, instead of enforcing the liability by a suit in equity for a foreclosure, may maintain an action at law against the grantee upon his promise, and recover a personal judgment for the whole mortgage debt."

We quote this view of the law expressed by that learned author to show that, by the weight of authority, the assumed personal obligation of Miller and his community to pay the indebtedness evidenced by the mortgage is a pure contractual obligation.

We also think the law is that, whether such an obligation shall be enforced by a suit in equity seeking foreclosure of the mortgage and in the same suit a deficiency personal judgment against those liable upon such a covenant, or shall be enforced by an action at law seeking only a personal money judgment against those liable upon such a covenant, is a matter of free choice on the part of the those entitled to the benefit of such a covenant. The following of our decisions recognize this to be the law: *Frye v. Meyer*, 22 Wash. 277, 60 Pac. 655; *Hanna v. Kasson*, 26 Wash. 568, 67 Pac. 271; *Citizens Nat. Bank v. Abbott*, 72 Wash. 73, 129 Pac. 1085.

Counsel for Miller and wife cite and rely upon our decision in *Frazey v. Casey*, 96 Wash. 422, 165 Pac. 104. That was an action at law upon a promissory note which was secured by a mortgage executed by the makers of the note who conveyed the mortgaged property to Casey. Neither the deed to Casey nor any other writing evidenced assumption by him of the debt or the note. It did appear by oral testimony that Casey orally promised to pay the obligation. We held that Casey was not liable upon the note sued upon because his signature did not appear upon it as maker or otherwise, and that therefore he was not liable thereon under our negotiable instruments act, § 3409, Rem. Code [Rem. Comp. Stat., § 3409], reading as follows:

"No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed his own name."

This is not an action against Miller and wife upon the note, but upon the covenant in the mortgage to pay the indebtedness, which was assumed by them upon accepting the deed from Bechtold and wife, the original

mortgagors, who were personally liable for the payment of the indebtedness wholly apart from their note, as we have seen. We think that decision is not controlling here, especially in view of our later decisions above noticed.

Contention is made in behalf of Miller and wife that, since the bank acquired equitable title to the mortgaged property from the county after it had acquired tax title thereto, the bank should now be held to account for the value of the land in part or in whole satisfaction of the indebtedness. It seems to us that the bank was as free to purchase the land from the county as any stranger to the mortgage and the indebtedness evidenced and secured thereby might have been. The bank was under no duty to pay the taxes. That was a duty of Bechtold and wife by express covenant in the mortgage, and assumed by Miller and wife. We think that the bank is under no obligation to Miller and wife because of its acquiring title to the mortgaged property from the county.

We conclude that the judgment must be affirmed. It is so ordered.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.