[No. 24467. Department Two. July 17, 1933.]

CITIZENS SAVINGS & LOAN SOCIETY, *Respondent*, v. FLOYD N. CHAPMAN *et al., Defendants,* CHARLES F. WOOD *et al., Appellants.*[1]

[1]Reported in 24 P. (2d) 63.

540

*James R. Gates,* for appellants.

*Robert B. Porterfield,* for respondent.

Tolman, J.—Respondent, being the owner and holder of a note for the principal sum of thirty-five thousand dollars, with interest, secured by a real estate mortgage, brought this action to foreclose the mortgage and to recover a deficiency judgment against those personally liable. After a trial on the merits, respondent was awarded foreclosure as demanded, and the defendants Harry E. Peterson and wife and Charles F. Wood, unmarried, were (with others) held liable for any deficiency.

The defendants Peterson and Wood alone appeal from that part of the judgment which holds them personally liable.

The facts are somewhat involved by reason of many transfers, but when the admitted facts are understood, the issues of fact here presented are rather narrow.

It appears that, some months after the mortgage was executed and after respondent became the owner of it, the mortgagors, defendants Chapman and wife, conveyed the mortgaged property by deed to the Underwood Investment Co., Inc., a corporation, the deed reciting that the conveyance was subject to the mortgage. Soon thereafter, the Underwood Investment Company sold the property by executory forfeitable contract to the defendant Swanson, and in and by that contract Swanson assumed and agreed to pay the mortgage. In a short time, Swanson assigned his rights under the contract to the appellants, the written assignment containing a promise for the assumption

of the mortgage debt by them. Still later, appellants made an executory forfeitable contract by which they agreed to sell and convey the property to defendant Wagner, by which contract Wagner assumed and agreed to pay the mortgage. Thereafter, various other contracts for the sale of the property were made, but these later contracts do not directly affect the present situation.

In the meantime, and while appellants were in possession under the contract, the Underwood Investment Company, having obtained the legal title from the Chapmans, conveyed that title to the defendant Mylroie by deed, subject to the mortgage and subject, also, to the Swanson contract to purchase. At the same time, it assigned to Mylroie all of its rights under the Swanson contract, and, as a part of the same transaction, by written agreement with Mylroie, the Underwood Investment Company guaranteed the full performance of the Swanson contract; and in the event that there should be default in performance by those directly interested, the Underwood Investment Company reserved to itself the right to require Mylroie to bring suit in his own name to forfeit and terminate the rights of all others claiming under the Swanson contract.

On February 2, 1931, or about fifteen months after appellants had contracted with Wagner and about eighteen months after the legal title had passed to Mylroie, appellants were in a position which would have entitled them to receive some three thousand dollars if subsequent vendees of the property had performed their contract obligations. Some of the subsequent vendees, who had likewise sold their interests, had similar equities, and the last vendee, defendant Faussett, was in possession of the mortgaged property. At that time, the Swanson contract was in default, as

was also the mortgage, by reason of nonpayment of interest and taxes. Mylroie was threatening to proceed against the Underwood Investment Company on its guarantee of the Swanson contract, and respondent was threatening to foreclose the mortgage.

Under these conditions, those subsequent to Swanson claiming rights under the Swanson contract (other than Mylroie) all agreed to, and did, execute quitclaim deeds to the Underwood Investment Company as grantee, which deeds were placed in escrow under the condition that Faussett should have thirty days in which to sell the property or otherwise cure the defaults, and those prior in time to Faussett should each, in turn, have a brief period in which to effect a sale, cure the defaults, and realize, if possible, upon their paper profit arising from purchase and sale of the property by them. If none were able to so dispose of the property within the time limited, the quitclaim deeds were to be delivered to the Underwood Investment Company, and all rights of the several grantors in the quitclaim deeds were to be terminated by such delivery of the deeds by the escrow holder to the Underwood Investment Company.

No sale was made by any one. The quitclaim deeds were delivered to the Underwood Investment Company, and it went into possession of the property, and in accordance with the agreement made some payments of taxes and interest on the mortgage before this foreclosure suit was instituted.

In July, 1931, when the Underwood Investment Company was in possession as just outlined, Mylroie, who held the legal title subject to the mortgage and was entitled to receive all payments under the Swanson contract, brought suit against the Underwood Investment Company on its guaranty of the Swanson contract, and recovered a judgment, which judgment

(after the entry of the judgment of foreclosure in this case) was paid by the Underwood Investment Company, and it thereupon became the owner of the fee title subject only to the mortgage and the decree foreclosing it.

We will refer to other facts as they relate to the questions under discussion, especially those which are in dispute.

Appellants' several contentions in this court, as we understand them, may be briefly stated as follows: (1) That there was a mistake of the scrivener, or a mutual mistake of fact, in inserting in the contract by which appellants acquired their interest in this land, the provision by which they were required to assume and pay the mortgage; (2) that there was a forfeiture of the Swanson contract and that such forfeiture destroyed their agreement to assume and pay the mortgage; and (3) that a provision in an executory contract for the assumption of an existing mortgage is nonenforcible. We will discuss these questions in the order mentioned.

█ Was the assumption clause written into the contract by which the appellants acquired their interest, by mistake of the scrivener or by a mutual mistake of fact?

We are not unmindful of the law relied upon by the appellants, as laid down in *Elliott v. Sackett,* 108 U. S. 132, 27 Law Ed. 678, and similar cases, but unfortunately for them, the facts here disclosed forbid the application of the rule.

The trial court, who saw and heard the witnesses, in his findings of fact, which are very forcibly amplified by an exhaustive and able memorandum opinion, held squarely that the evidence failed to establish mistake of the scrivener or a mutual mistake of the parties to the contract. After a careful examination of all of the evidence on this subject, we are convinced that, under

the rule that the evidence must be clear and convincing to establish mutual mistake and warrant relief, we must likewise so hold.

Was there a forfeiture of the Swanson contract, even supposing that a forfeiture would release the appellants from their agreement to assume and pay the mortgage?

Again the trial court found against the appellants on the facts, and, we think, rightly so. Mylroie, who was the payee under the Swanson contract, took no step to declare a forfeiture. Swanson was not a party to the agreement under which the quitclaim deeds were executed and delivered, and the plain intent and purpose of that agreement was to obtain more time and opportunity for each party in turn to sell the property and cure the defaults.

The agreement by its terms provided:

"It is further agreed that Underwood has paid or will forthwith pay the delinquent mortgage interest above mentioned and will endeavor to prevent the said Lillian O. Mylroie from declaring a forfeiture of said contract."

By this agreement, appellants gained the advantage of time in which Faussett first, and others in turn, including themselves, might make a sale and cure the defaults. Failing such results, appellants conveyed their rights, such as they were, to the Underwood Investment Company, upon the consideration that payments made by it on the mortgage would lessen their liability. The Underwood Investment Company, if it then had any right to require that Mylroie declare a forfeiture, did not do so, and when it finally paid up the Swanson contract under its guaranty, foreclosure of the mortgage had already taken place and it was then too late to declare a forfeiture. We see nothing in the agreement and the acts done under it except a

sale of the junior rights to one having senior rights, based upon a valuable consideration which was sufficient under the circumstances disclosed.

In fact and in law, there was no attempt to forfeit the Swanson contract. Everyone contemplated that it should remain in full force and effect so that he who cured the default might acquire title under it. The Underwood Investment Company did acquire title by virtue of the Swanson contract when it paid Mylroie under its guaranty of that contract. The Swanson contract was never forfeited, nor was the appellants' interest therein ever forfeited, but that interest was conveyed, as we have already seen, for a valuable consideration.

The law is well settled in this state in accordance with the well-nigh universal rule that a grantee of mortgaged property who assumes the debt becomes personally bound and may be held at the suit of the mortgagee for any deficiency. *Harbican v. Chamberlin*, 82 Wash. 556, 144 Pac. 717. And it is no defense that an intermediate grantee has not assumed. *Corkrell v. Poe*, 100 Wash. 625, 171 Pac. 522, 12 A. L. R. 1524. This upon the theory of contract for the benefit of a third party. *Federal Land Bank of Spokane v. Miller*, 155 Wash. 479, 284 Pac. 751.

It would appear, therefore, that appellants are bound by their contract to assume, whether that provision be a part of an executory contract or embodied in an instrument evidencing a fully executed contract. They contracted to buy the property and, in effect, the mortgage was a part of the purchase price. They agreed to pay that part of the purchase price to the holder of the mortgage, and to that extent the contract was for the benefit of a third party. The overplus above the mortgage which they agreed to pay to others

would not appear to in anywise affect the covenant to pay the mortgage. Appellants by their assumption of the mortgage debt became in law the principal debtors as between themselves and Swanson, and Swanson, from whom they purchased, became the surety. This is the universal rule.

We have often upheld such assumptions in executory contracts. *Sanders v. Sheets,* 142 Wash. 155, 252 Pac. 531; *Gillman v. Purdy,* 167 Wash. 659, 9 P. (2d) 1092. See, also, *Pearce v. Puget Sound Broadcasting Co.,* 170 Wash. 472, 16 P. (2d) 843.

None of our cases even hint at a contrary doctrine. We have, however, a line of cases typified by *Horstmann Co. v. Waterman,* 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856, based upon contracts of indemnity where one promises to advance his own money to pay the debt of another, in which we have held that such contracts are not made for the benefit of third persons, and that those not parties to the contract may not recover thereon. This line of cases has no application to the facts in this case.

In any event, so far as appellants are concerned, the contract between Swanson and themselves was fully executed. By the Swanson assignment, they then received all the interest in the mortgaged property that Swanson had, and nothing remained to be done between the parties to that agreement. There was a sufficient consideration, and the covenant to assume immediately became absolute.

Finding no error, the judgment is affirmed.

BEALS, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.