803 P.2d 911

William P. CELY and Merlann E. Cely,
husband and wife,
Plaintiffs–Appellants,

v.

DeCONCINI, McDONALD, BRAMMER,
YETWIN & LACY, P.C., an Arizona
corporation; Richard M. Yetwin and
Jane Doe Yetwin, husband and wife, in
his personal capacity and as agent, em-
ployee or representative of DeConcini,
McDonald, Brammer, Yetwin & Lacy,
P.C.; Lawyer's Title of Arizona, an Ari-
zona corporation; Janet Heist and
John Doe Heist, wife and husband, per-
sonally and in her capacity as agent,
employee or representative of Lawyer's
Title of Arizona; The Bank of Newport,
and Douglas H. Clark, Jr., a single man,
Defendants–Appellees.

No. 2 CA–CV 88–0389.

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 7, 1990.

Reconsideration Denied Sept. 2, 1990.

Review' Denied Jan. 23, 1991.

Salese & McCarthy, P.C. by Armand Salese, Tucson, for plaintiffs-appellants.

Mesch, Clark & Rothschild, P.C. by Jonathan Rothschild, Tucson, for defendant-appellee Douglas H. Clark, Jr.

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. by Jane L. Eikleberry, Tucson, for defendants-appellees Lawyer's Title and Janet Heist.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes, Tucson, for defendants-appellees DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C., and Richard M. and Jane Doe Yetwin.

## OPINION

FIDEL, Presiding Judge.

In *Baker v. Gardner,* our supreme court held that the holder of a note and security device may not waive the security and sue on the note to hold the maker personally liable for the unpaid balance when the security falls within the limited class of purchase money mortgages and deeds of trust described in Arizona's anti-deficiency statutes.[1] 160 Ariz. 98, 104, 770 P.2d 766, 772 (1988). We hold in this case that when one home is mortgaged to secure the purchase of a second home, the mortgage is not a purchase money security interest and the mortgage anti-deficiency statute does not apply.

## BACKGROUND

The plaintiffs Cely bring this appeal from summary judgment entered in favor of all defendants. We state the facts in the light most favorable to the Celys' appeal.

When the Celys sold their Tucson home to defendant Douglas Clark, it was encumbered by two security interests. The first, a purchase money deed of trust to Home Federal Savings and Loan Association, is not the subject of this suit. The second, which this suit does concern, was a second mortgage originally given to Terry Gropp. The Celys gave Gropp this mortgage on their Tucson home to secure their purchase of Gropp's home in Oregon. Gropp later assigned their note and second mortgage to the Bank of Newport.

When the Celys undertook to sell their Tucson home to Clark, they initially sought novation[2] on the note secured by the first deed of trust (note 1). They wished, that is, to achieve complete release from liability by substituting Clark as sole obligor on that note. Whether the Celys also sought novation on the note secured by the Gropp mortgage (note 2) is unclear in the record, but they at least intended for Clark to assume[3] the second note.

Clark executed a document entitled "Deposit Receipt and Agreement," which acknowledged his $2,000 earnest money deposit and set forth the selling price of the Tucson home. The agreement stated that Clark would pay $10,000 as a down payment and would "assume existing mortgages at 8½% and 11%." The agreement fur-

---

1. A.R.S. §§ 33–729(A) (1990) and 33–814(E) (1990).

2. A novation is a substitution of one debtor or creditor for another, or the substitution of a new debt or obligation for an existing debt or obligation. *Shiflet v. Marley,* 58 Ariz. 231, 236, 118 P.2d 1107, 1109 (1941). There must be a mutual agreement between the creditor and debtor to extinguish the old obligation by substituting a new one. *Steele v. Vanderslice,* 90 Ariz. 277, 284, 367 P.2d 636, 640 (1961).

3. When a buyer "assumes" the seller's mortgage, he becomes personally liable for paying or otherwise discharging the debt on the property. *Ray v. Donohew,* 352 S.E.2d 729, 735–36 (W.Va. 1986). The buyer becomes primarily liable on the note, and the original maker is relegated to the status of surety. *Yasuna v. Miller,* 399 A.2d 68, 73 (D.C.App.1979).

ther provided: "This sale is subject to aforementioned assumption at the stated interest rates with a reasonable assumption fee."

Home Federal later informed the Celys' attorney, Richard Yetwin, that Clark would face a higher interest rate and a fee if the transaction were structured to release the Celys from all liability on note 1. Dr. Cely notified Home Federal to proceed instead with an assumption and that he would remain secondarily liable on that note.

■ The sale closed under the direction of defendant Janet Heist of Lawyer's Title. Two preliminary escrow statements, one for Clark and the other for the Celys, listed the Home Federal deed of trust and the Gropp mortgage as "assumed." The deed from the Celys to Clark, however, indicated that the conveyance was "subject to"[4] various restrictions and easements, including the Home Federal deed of trust and the Gropp mortgage.

Defendant Yetwin actively represented the Celys throughout the sale to Clark. Yetwin was aware that the Celys wanted Clark to assume notes 1 and 2, and he reviewed the closing documents before the transaction was completed to ensure that they complied with the Celys' intent.

After the sale was final, Clark began to pay the Bank of Newport directly on note 2. Approximately four years later, however, the Bank notified the Celys that Clark had defaulted. Yetwin then wrote to the Celys and advised them to inform the bank that it should collect from Clark. Yetwin's letter further stated:

> In the event Mr. Clark declines to pay the mortgage installments, we would recommend that you do not voluntarily pay any sums demanded by the bank. If the bank institutes litigation against you due to a default under the terms of the mortgage, *you would have a claim over and against Mr. Clark for any amounts found due and owing to the bank.* Your position vis-a-vis the Bank of Newport is identical to your position with respect to Home Federal Savings. In each case, the buyer became primarily obligated to the lending institution. However, since a novation agreement was not signed by all parties, you remain secondarily liable on the deed of trust to Home Federal Savings and on the mortgage to the Bank of Newport.

(Emphasis added.)

Eventually the Bank of Newport sued the Celys in Oregon; instead of foreclosing on the Tucson property, the bank sued the Celys personally and collected judgment for the unpaid balance of note 2 plus attorney's fees, interest, and costs. To recoup this judgment, the Celys sued Clark for breach of contract and fraud. They also sued Yetwin and his law firm, DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C. (the "DeConcini firm"), and Lawyer's Title of Arizona and its escrow agent, Janet Heist, alleging that these defendants were negligent if they had failed to accomplish an assumption.

Clark maintained that he had not assumed the Gropp mortgage, that he had only purchased the property "subject to" the Gropp mortgage, and that he had no contractual responsibility to pay the note that it secured.

The trial court eventually granted Clark summary judgment on the Celys' breach of contract claims. The court did not decide whether Clark had actually assumed note 2, apparently reasoning that assumption would have made no difference. The court treated the Gropp mortgage as a purchase money security interest and concluded that, even in the event of an assumption, Arizona's mortgage anti-deficiency statute,

---

**4.** A purchaser who buys real property "subject to" a mortgage pays the consideration required by the seller and takes the land without a personal obligation to pay the mortgage, but subjects himself to losing the property if the mortgage debt is not paid. *Del Rio Land, Inc. v. Haumont,* 110 Ariz. 7, 9, 514 P.2d 1003, 1005 (1973).

The parties dispute whether Clark contracted to assume notes 1 and 2, and they dispute whether the composite escrow documents accomplished an assumption. The trial court did not resolve these issues, and our disposition on other grounds revives them for resolution in the trial court upon remand.

A.R.S. § 33–729, would have precluded a judgment against Clark for money damages. The court found that the Celys' sole remedy against Clark was to foreclose on the Tucson home.[5]

Upon the trial court's issuance of this ruling, the other defendants renewed motions for summary judgment that the court had previously denied. Defendants argued that, even if they had negligently failed to accomplish an assumption, they had caused no damage by their conduct because the anti-deficiency statute precluded personal recourse against Clark. The trial court granted the defendants' motions without explanation.

From the trial court's formal judgment in favor of all defendants, the Celys bring this timely appeal. We reverse and hold as follows:

1. When the Celys gave Gropp a mortgage on their Tucson home to secure their note for the purchase of Gropp's Oregon home, the mortgage was not a purchase money mortgage. A purchase money mortgage is one that encumbers the property being sold.

2. The Gropp mortgage retained its character upon the Celys' sale to Clark. Clark's assumption of the underlying note (note 2) would not have transformed it into a purchase money mortgage.

3. Because the Gropp mortgage was not and did not become a purchase money mortgage, the mortgage anti-deficiency statute does not apply.

5. The trial court also granted summary judgment for Clark on the remaining counts alleging a fraudulent scheme and artifice and common law fraud. The Celys do not appeal the dismissal of these counts, and we will say no more about them.

6. A.R.S. § 33–729(A) provides:

**Purchase money mortgage; limitation on liability**

[I]f a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the

## DISCUSSION

Arizona's mortgage anti-deficiency statute, A.R.S. § 33–729(A), restricts the remedy upon default of creditors with purchase money mortgages.[6] The statute provides that a creditor may not foreclose on a purchase money mortgage and then pursue the debtor for a deficiency. Further, as the Arizona Supreme Court held in *Baker v. Gardner*, the creditor may not waive the mortgage altogether and sue the debtor personally on the note. 160 Ariz. at 104, 770 P.2d at 772.

The defendants rely on two theories to support their argument that the second mortgage was a purchase money interest. They argue first that the Celys gave Gropp a purchase money mortgage on the Tucson home when they bought the Oregon home, and that the mortgage retained its character when Clark assumed the note. They argue alternatively that the mortgage would in any event have become a purchase money mortgage if assumed by Clark to secure his purchase of the Tucson home. We consider each argument in turn.

## THE GROPP MORTGAGE WAS NOT ORIGINALLY A PURCHASE MONEY MORTGAGE

■ Our supreme court has relied on the similarity between Arizona's anti-deficiency statutes and those in California[7] to inter-

judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary.

7. California's anti-deficiency statute, Cal.Civ. Proc.Code § 580b (West 1976), provides in pertinent part as follows:

§ 580b. [When deficiency judgment forbidden: Exceptions]

No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust or mortgage, given to the vendor to secure payment of the

pret our statutes. *Baker v. Gardner*, 160 Ariz. at 102, 770 P.2d at 770. California case law indicates that in the standard purchase money transaction, the seller retains an interest in the land sold to secure payment of part of the purchase price. *Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 41, 378 P.2d 97, 100 (1963).

Gropp did not retain an interest in the *Oregon* home to secure the Celys' note; he took an interest in the Tucson home, an asset unrelated to the sale. Thus, if Arizona law should follow California in this respect, the mortgage was not a purchase money interest when the Celys gave it to Gropp.

The defendants argue, however, that the California cases discussed in *Baker v. Gardner* are inapposite because the origin and purposes of the California statute differ from the Arizona anti-deficiency statute. We disagree. The *Baker* court stated that it read the Arizona and California statutes as similar in purpose. 160 Ariz. at 102–03, 770 P.2d at 771. The California Supreme Court has explained the application and purposes of that state's anti-deficiency statute as follows:

> Section 580b was apparently drafted in contemplation of the standard purchase money mortgage transaction, *in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price.* Variations on the standard are subject to section 580b only if they come within the purpose of that section.
>
> . . . .
>
> Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. *Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value.* If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the
>
> balance of the purchase price of real

downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales.

*Roseleaf Corp. v. Chierighino*, 59 Cal.2d at 41–42, 378 P.2d at 100–01 (citations omitted) (emphasis added).

In *Roseleaf,* buyers purchased a hotel from the plaintiff and financed the transaction with four notes, three of which were secured by a second deed of trust on property other than the hotel. 59 Cal.2d at 38, 378 P.2d at 98. The first note was secured by a purchase money trust deed and was not involved in the case. *Id.* The court, analyzing the purposes of California's anti-deficiency statutes, determined that the second trust deed was not a purchase money interest and that the plaintiff could sue the buyers personally on all three notes. The court stated:

> To apply section 580b here would mean that the [buyers] would acquire the hotel at less than the agreed price. Furthermore, if there is any merit in the theory that "the vendor knows the value of his security and assumes the risk of its inadequacy," that theory does not apply here. There is no reason to assume that [seller] had any greater knowledge of the value of the [buyers'] land than did the [buyers].

59 Cal.2d at 43, 378 P.2d at 101.

The purposes served by Arizona's mortgage anti-deficiency statute are identical to those served by California's statute and are equally inapplicable to the transaction between Gropp and the Celys. When the Celys mortgaged their Tucson home, they were in a better position to know its value than Gropp. The anti-deficiency statute could not ensure that Gropp priced the Oregon home appropriately because the mortgage was not taken on that home. Nor did the Celys risk losing their residential purchase in Oregon through foreclosure while remaining liable for its purchase price. *See Roseleaf,* 59 Cal.2d at 41–43, 378 P.2d at 101. The Tucson home

property. . . .

served in the Oregon transaction as non-purchase money collateral—no different conceptually than an art work or an heirloom or the family jewels. We conclude that the anti-deficiency statutes do not apply.

Our conclusion is additionally supported by consideration of North Carolina authority, as our supreme court commented in *Baker v. Gardner* on the similarity of purpose in North Carolina's anti-deficiency statute and ours. 160 Ariz. at 103, 770 P.2d at 771.[8] A purchase money interest only exists in North Carolina if it is "made as a part of the same transaction in which the debtor purchases land, embraces the land so purchased, and secures all or part of its purchase price." *Dobias v. White*, 239 N.C. 409, 412, 80 S.E.2d 23, 26 (1954).

We further note that the Uniform Commercial Code defines a purchase money security interest in *personal* property and fixtures in similarly restrictive terms. A.R.S. § 47–9107(1) (1988) provides that a security interest is a "purchase money security interest" to the extent that it is "[t]aken or retained by the seller of *the collateral* to secure all or part of its price." (Emphasis added).

■ We conclude on the basis of these authorities that a purchase money mortgage is one that encumbers the property being sold. We accordingly conclude that the Celys did not give Gropp a purchase money interest when they bought Gropp's Oregon home.

## THE GROPP MORTGAGE WAS NOT TRANSFORMED INTO A PURCHASE MONEY MORTGAGE UPON SALE TO CLARK

■ The defendants next argue that, even if the mortgage on the Tucson home was not a purchase money interest when

given to Gropp, it would have become a purchase money mortgage upon Clark's assumption in his purchase of the Tucson home.

This theory is refuted, however, by *Southwest Sav. & Loan Ass'n v. Ludi*, 122 Ariz. 226, 594 P.2d 92 (1979). The Ludis assumed both a note secured by a purchase money mortgage and a note for a property improvement loan secured by a second mortgage. *Id.* at 227, 594 P.2d at 93. When the Ludis defaulted on both notes, they argued, as do defendants here, that because they assumed both mortgages as part of the consideration for the purchase of the property, both were purchase money interests. *Id.* at 228, 594 P.2d at 94. The Arizona anti-deficiency statute, they therefore contended, prohibited Southwest from suing them personally on the second note as well as the first. *Id.* Rejecting this argument, our supreme court reasoned:

> In order to determine whether the Ludis may claim any benefit from [the anti-deficiency] statute as a result of their assumption, we must look to the rights given them by their grantor.... [The grantor] gave Southwest a second mortgage and note, not for purchase money, but for a property improvement loan. That mortgage is clearly not covered by the statute.... *The Ludis' assumption of the two mortgages and notes puts them in the same position occupied by their grantor.*

*Id.* (emphasis added).

The defendants assert that *Baker v. Gardner* effectively overruled *Ludi*'s restrictive application of the anti-deficiency statutes. We disagree. To the contrary, the court reaffirmed *Ludi* as reserving room for creditors to sue on the note when the anti-deficiency statutes do not apply. 160 Ariz. at 104, 770 P.2d at 772.

8. The North Carolina Statute, N.C.Gen.Stat. § 45–21.38 (1989), states in pertinent part:

**Deficiency judgments abolished where mortgage represents part of purchase price.**

In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust ... to secure to the seller the payment of the balance of the purchase price of real property,

the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided, said evidence of indebtedness shows upon the face that it is for balance of purchase money for real estate....

The defendants alternatively attempt to distinguish *Ludi* because the second mortgage there secured a note for a home improvement loan—clearly not a purchase money transaction—whereas this second mortgage secured a note for the purchase of a different home. This distinction is beside the point. We do not cite *Ludi* to support the conclusion that the Gropp note was not a purchase money interest. We have explained that conclusion in the preceding section of this opinion on the basis of authorities other than *Ludi.* We rely on *Ludi* rather for the proposition that Clark could not take an interest superior to that held by the Celys. The mortgage was not a purchase money interest when the Celys gave it to Gropp, and it could not become one upon Clark's assumption.

Because the Gropp mortgage was not originally and did not become a purchase money mortgage, we conclude that the trial court erred in deciding that Clark was protected by the mortgage anti-deficiency statute from personal liability to the Celys. This error underlay the court's entry of summary judgment for Clark and for the other defendants as well.

### OTHER ISSUES

The parties raise other issues that we do not reach. Some, if not all, require factfinding, and none were resolved by the trial court in its grant of summary judgment. We reverse the trial court's determination of the central issue of the status of the Gropp mortgage and the applicability of the anti-deficiency statute, but leave all other issues for disposition upon remand. *See, e.g., Villegas v. Transamerica Fin. Serv.*, 147 Ariz. 100, 103, 708 P.2d 781, 784 (1985) (a reviewing court will only consider alternative theories that the trial court has not considered if the facts and inferences are clear).

### CONCLUSION

The second mortgage on the Tucson home was not a purchase money interest because it did not attach to the property bought by the Celys. Clark's assumption of the note and mortgage to purchase the Tucson home did not transform the interest into a purchase money mortgage. A.R.S. § 33–729, therefore, does not prevent the Celys from suing Clark directly on the Gropp note. Nor does it relieve the other defendants of defending any failure to accomplish an assumption. The judgment granted in favor of the defendants is reversed, insofar as it was appealed, and the matter is remanded for proceedings consistent with this opinion.

Reversed and remanded.

GERBER and EUBANK, JJ., concur.