819 P.2d 969

**Dale A. SIGMEN, Plaintiff–Appellant,**

**v.**

**ARIZONA DEPARTMENT OF REAL ES-TATE; Joe Sotelo, Commissioner of Real Estate; and Patricia Esser Cooper, Hearing Officer for the Arizona Department of Real Estate, Defen-dants–Appellees.**

No. 1 CA–CV 88–551.

Court of Appeals of Arizona, Division 1, Department D.

April 2, 1991.

As Corrected on Grant of Reconsideration May 13, 1991.

Review Denied Nov. 5, 1991.

384

Lallis, Trompeter, Noziglia & Hulse by Keith R. Lallis, Phoenix, for plaintiff-appellant.

Grant Woods, Atty. Gen. by Patrick M. Murphy, Chief Counsel, Financial Fraud Div., and Denise M. Westfall, Asst. Atty. Gen., Phoenix, for defendants-appellees.

## OPINION

FIDEL, Judge.

A former real estate broker contests the Arizona Department of Real Estate's revocation of his broker's license. We find that the Department's order was supported by the evidence and appropriately affirmed by the superior court.

## FACTS

When Greg and Carol Wiley undertook to sell their Phoenix home and move to Utah, they contacted appellant Dale A. Sigmen. Sigmen had engaged as broker or principal in previous real estate dealings with the Wileys and their families, and they had developed what Sigmen acknowledged as a relationship of trust and confidence.

Although Sigmen prepared an agreement to list their home for sale, the Wileys wished to move immediately and agreed to sell Sigmen their equity for $1,000.00. The home was burdened with a mortgage. Equity was transferred by a quit-claim deed that Sigmen suggested and prepared.

After recording the Wileys' deed, Sigmen promptly subjected the property to a second deed of trust to secure one of his own outstanding debts. Sigmen leased out the property and received monthly rental payments of $490.00 for a period of six months, but made no mortgage payments during that time. The Wileys, contacted by the mortgagee, paid some portion of the arrearage, but the mortgagee eventually foreclosed.

The Wileys lodged a formal grievance with the Arizona Department of Real Estate, which in turn sought suspension or revocation of Sigmen's broker's license pursuant to Ariz.Rev.Stat.Ann. § 32–2153 (1984). A Department hearing officer adjudicated the matter in August 1987.

The witnesses disputed whether Sigmen had promised to assume the existing mortgage on the Wileys' home. According to testimony by Greg Wiley, corroborated by his father-in-law, Robert Stewart, Sigmen verbally agreed to prepare the necessary

papers and assume [1] the debt. Wiley stated that he made clear to Sigmen that he did not wish to remain liable for the mortgage after the sale.[2]

> Q: You are absolutely certain that Mr. Sigmen promised you that he would assume your mortgage?
>
> A: Yes, ma'am.
>
> Q: Was that promise part of the inducement for you to sell your home to Mr. Sigmen?
>
> A: Yes. I realized that somebody has to assume the mortgage or going to keep it (sic). That wasn't my intent. I made that clear to Dale. He said that he would send us the assumption papers to Utah.

Wiley further testified that, as Sigmen fell behind in the mortgage payments and the mortgagee contacted the Wileys, Wiley repeatedly urged Sigmen to accomplish the assumption.

> [A]nd he did agree that he would send us the papers or he would have some kind of excuse why things weren't working out. But he never did tell us ever that he had no intentions of assuming the loan. It was always either an excuse why he couldn't or, "I'll send them right away."

Wiley added that Sigmen eventually mailed assumption papers, which the Wileys completed and returned to their in-laws, who then forwarded the papers to Sigmen's office "so that Dale could continue the paperwork."

Sigmen gave a different account. Sigmen acknowledged telling the Wileys, "I would take the payment book and start making the payments to this property,"

and he acknowledged a "moral obligation" to make the payments, but he denied contracting with the Wileys to assume the mortgage on their home. He also denied sending them assumption papers. He claimed rather to have told the Wileys he would structure this transaction just as he had structured their prior real estate transactions—subject to [3] the mortgage.

Sigmen and the Wileys also disputed whether Sigmen had disclosed his financial circumstances at the time of sale. By his own testimony, those circumstances were precarious: Sigmen was engaged in a divorce, lacked substantial assets, owed creditors at least $20,000, and had recently transferred a car to his brother because he could not make the payments. Sigmen claimed to have told the Wileys of his difficulties. Greg Wiley testified, however, that Sigmen never suggested that his financial condition would inhibit his making mortgage payments as they came due.

The hearing officer resolved credibility issues against Sigmen and concluded that Sigmen had engaged in substantial misrepresentations; false promises of a character likely to influence, persuade, or induce; and fraud or dishonest dealings within the meaning of Ariz.Rev.Stat.Ann. §§ 32–2153(A)(1), (A)(2), (A)(5), and (B)(5). The hearing officer recommended that Sigmen's license be suspended or revoked, or that he be denied the right to renew his license pursuant to § 32–2153(B)(5). In accordance with the hearing officer's recommendation, the Department revoked Sigmen's license on November 20, 1987.

Sigmen first sought administrative rehearing and then filed a complaint in the superior court pursuant to Ariz.Rev.Stat.

---

**1.** We recently defined assumption as follows: "When a buyer 'assumes' the seller's mortgage, he becomes personally liable for paying or otherwise discharging the debt on the property.... The buyer becomes primarily liable on the note, and the original maker is relegated to the status of surety." *Cely v. DeConcini, McDonald, et al.,* 166 Ariz. 500, 501 n. 3, 803 P.2d 911, 912 n. 3 (App.1990) (citations omitted).

**2.** What Wiley described having wanted was a novation, which we recently defined as "a substitution of one debtor or creditor for another, or the substitution of a new debt or obligation

for an existing debt or obligation.... There must be a mutual agreement between the creditor and debtor to extinguish the old obligation by substituting a new one." *Cely,* 166 Ariz. at 501 n. 2, 803 P.2d at 912 n. 2 (citations omitted).

**3.** "A purchaser who buys real property 'subject to' a mortgage pays the consideration required by the seller and takes the land without a personal obligation to pay the mortgage, but subjects himself to losing the property if the mortgage debt is not paid." *Cely,* 166 Ariz. at 502 n. 4, 803 P.2d at 913 n. 4.

Ann. §§ 12–901 to 913 (1982), seeking review of the Department's order. After the superior court affirmed revocation of his license, Sigmen initiated this appeal.

## DEFERENCE TO FACTFINDER

Sigmen argues first that the record lacks sufficient evidence to support the hearing officer's findings of fact. We disagree.

■■■ When the superior court reviews an agency's factual findings, it examines whether they are supported by substantial evidence. *Webster v. State Bd. of Regents*, 123 Ariz. 363, 365, 599 P.2d 816, 818 (App. 1979). On appeal from superior court review, we do the same. *Id.*

■ Sigmen argues that the hearing officer failed to draw appropriate inferences from his contemporaneous purchase of the Wileys' car, subject to their auto loan. Sigmen testified that he informed the Wileys that he could not qualify to refinance the car. Wiley was cross-examined on this subject as follows:

Q: Isn't it a fact that Dale told you that he could not get a new [auto] loan because he was having financial difficulties at that time?
A: That could be. I don't remember him saying that. It's quite possible.

\* \* \* \* \* \*

Q: Did you hand him the payment book on that day?
A: I believe we did.
Q: So he agreed to assume the real estate loan but not this loan?
A: Uh-huh.
Q: Didn't Dale tell you that he was having credit problems and couldn't qualify for a car loan?
A: I don't recall him saying that. I thought because he had recently had an accident with his car, he needed a vehicle. If I recall, he was driving a rented vehicle at the time.

Sigmen argues that the hearing officer should have inferred that the parties agreed or understood that in the house transaction, as in the car transaction, Sigmen would not assume—and lacked financial standing to assume—the underlying debt. Sigmen also argues that the hearing officer gave inadequate weight to evidence that Sigmen told the Wileys he would do business with them as in the past and that in at least one prior transaction he had purchased their property subject to a mortgage, without assumption or novation.

The hearing officer found Sigmen's testimony on these issues unpersuasive and the Wileys' evidence more credible. It is not this court's function to reweigh the evidence. *Petras v. Arizona State Liquor Bd.*, 129 Ariz. 449, 451, 631 P.2d 1107, 1109 (App.1981). The hearing officer as trier of fact was the proper judge of witness credibility. *Holding v. Industrial Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984). The record, deferentially reviewed, supports the hearing officer's findings on these points.

## SUBSTANTIAL MISREPRESENTATION

■ Though we owe the Department's conclusions of law no deference and may substitute our own, *Gardiner v. Arizona Dep't of Economic Security*, 127 Ariz. 603, 606, 623 P.2d 33, 36 (App.1981), we find no flaw in the Department's conclusions or disposition in this case.

■ We examine only the question whether Sigmen could be found to have engaged in "substantial misrepresentation" pursuant to § 32–2153(A)(1), meriting revocation of his license pursuant to § 32–2153(B)(5). Because we uphold the Department's decision on this ground, we need not reach the question whether Sigmen's conduct also violated §§ 32–2153(A)(2) or (A)(5).

Sigmen argues that he made no false statement because he fully intended to make the payments on the Wiley home; the Wileys merely misunderstood his intention to make the mortgage payments—an intention frustrated by financial mishaps—for a contractual undertaking to assume the mortgage. Misrepresentation, he argues, "cannot be predicated on unfulfilled promises, expressions of intention, or statements concerning future events unless

such were made without present intention ... to perform." For this proposition, Sigmen cites *Staheli v. Kauffman,* 122 Ariz. 380, 595 P.2d 172 (1979).

The simple answer to this argument is that the hearing officer rejected Sigmen's characterization of this transaction as a mere misunderstanding. Based upon the testimony of both Sigmen and Greg Wiley, the hearing officer found that Sigmen had a relationship of trust and confidence with the Wileys. She found that Sigmen abused that relationship by failing to explain that the property would be transferred subject to the existing encumbrance and that the transaction involved a degree of risk. She found additionally that Sigmen's failure to use a written contract of sale or escrow, "from which Wileys might have gleaned the details of the transaction, left the Wileys reliant only on [Sigmen's] words." The hearing officer concluded that Sigmen had "lulled the Wileys into believing that they would no longer be liable on the note and deed of trust and that he would assume the encumbrance." The hearing officer found this to constitute a substantial misrepresentation of the type and degree contemplated in Ariz.Rev.Stat.Ann. § 32–2153(A)(1). We agree.

"Misrepresentation" entails concealment of what is true as well as assertion of what is false. *State v. Coddington,* 135 Ariz. 480, 481, 662 P.2d 155, 156 (App.1983).

> When one conveys a false impression by the disclosure of some facts and the concealment of others, such concealment is in effect a false representation that what is disclosed is the whole truth.

*Id.* The hearing officer found in effect that Sigmen abused a relationship of confidence by concealing material facts to create a false and "lulling" impression. We find no error in drawing the conclusion of substantial misrepresentation from such facts.

### PRINCIPAL OR AGENT

Sigmen next argues, however, that he was disciplined pursuant to an overly rigorous standard because, in his transaction with the Wileys, he was acting as principal, not as agent.

■ A confidential relation exists between real estate agent and principal. *Leigh v. Loyd,* 74 Ariz. 84, 87, 244 P.2d 356, 358 (1952). A confidential relation does not ordinarily exist between principals. Sigmen's relationship with the Wileys, however, was not purely an arm's length transaction. The Wileys came to Sigmen as an agent, and, as we have previously indicated, Sigmen acknowledged at the hearing that they placed their trust and confidence in him.

■ Moreover, at the time of this transaction, Ariz.Rev.Stat.Ann. § 32–2153(B)(5) provided that if a licensee committed a "substantial misrepresentation" under § 32–2153(A)(1), his license could be suspended or revoked, whether the licensee was acting as agent or as principal.[4] Specifically, the then-existent version of § 32–2153(B)(5) provided:

> B. The commissioner may suspend or revoke a license, deny the issuance of a license or deny the renewal or the right of renewal of a license issued under the provisions of this chapter when it appears that the holder or applicant therefor, has:
>
> . . . .
>
> 5. Committed any act described in subsection A, paragraph 1, 2, 5, 8, 16 or 24, while acting as agent for another *or as principal.*

Ariz.Rev.Stat.Ann. § 32–2153(B) (1984) (emphasis added).

At oral argument, counsel for Sigmen maintained, despite this language, that a principal was not subject to the proscriptions of subsection (B)(5). Counsel emphasized the reference in subsection (B)(5) to acts prohibited under subsection (A). Subsection (A) in turn authorized suspension or revocation if a licensee committed certain

---

4. In 1989, the legislature rewrote § 32–2153 and deleted the language of (B)(5). Ariz.Rev.Stat. Ann. § 32–2153(B) (1989).

enumerated acts "in the performance of or attempt to perform any acts *authorized by such license or by this chapter.*" Ariz. Rev.Stat.Ann. § 32–2153(A) (1984) (emphasis added). Counsel concluded that subsection (A)'s requirement of an attempt to perform an act authorized by one's license was incorporated by reference into subsection (B)(5) and effectively nullified the latter subsection's provision that a licensee might be disciplined for acts undertaken as a principal. This reading is untenably strained and would render the reference to principals in subsection (B)(5) superfluous. It makes far more sense to conclude that the applicable version of subsection (B)(5) referred only to the conduct described in paragraphs (1), (2), (5), (8), (16), and (24) of subsection (A), and did not incorporate subsection (A)'s prefatory language. We hold that in passage of the 1984 version of subsection (B)(5), the legislature determined that the enumerated acts should bear on license status and eligibility whether committed as agent or as principal.

## PROCEDURAL DUE PROCESS

██ Sigmen objects on due process grounds to the Department's practice of investigating, prosecuting, and adjudicating disciplinary matters. In administrative proceedings, however, this combination of functions has long been permitted absent a showing of actual bias or partiality. *Matter of Ackel,* 155 Ariz. 34, 38–39, 745 P.2d 92, 96–97 (1987); *Rouse v. Scottsdale Unified School District,* 156 Ariz. 369, 374, 752 P.2d 22, 27 (App.1987). Because Sigmen has not alleged actual bias or partiality on the part of the Department, we find no denial of his procedural due process rights.

## PENALTY

The Assistant Attorney General who served as prosecutor at hearing recommended only that Sigmen's license be suspended. The hearing officer found grounds in Sigmen's conduct for the Department either to censure Sigmen or to suspend or revoke his license. The Department chose revocation—the most severe among its options. Sigmen acknowledges the Department's responsibility through licensee discipline to protect the public from unscrupulous persons, but argues that the testimony did not show unscrupulous dealings on his part. Claiming an exemplary record before this incident, Sigmen argues that revocation was an abusively harsh penalty for a mere misunderstanding. He further argues that the Department abused its discretion in imposing a greater penalty than the Assistant Attorney General asked.

██ We find no ground to intercede. Regardless of the recommendation made by counsel, the responsibility to discipline licensees and protect the public lies with the Department. *Howard v. Nicholls,* 127 Ariz. 383, 388, 621 P.2d 292, 297 (App. 1980). Moreover, it is immaterial whether this court would have chosen the same sanction. "The decision as to the penalty to be imposed is vested by A.R.S. § 32–2153 in the commissioner." *Id.*

██ We have already noted the hearing officer's observation that Sigmen's failure to use a written contract of sale or escrow, "from which Wileys might have gleaned the details of the transaction, left the Wileys reliant only on [Sigmen's] words." This omission likewise left Sigmen exposed to a credibility contest over how he had represented the transaction to the Wileys. In that credibility contest, the Department rejected Sigmen's characterization of the incident as a mere misunderstanding and found instead that he had abused a relationship of trust and had "lulled the Wileys" into overestimating the transaction's advantages and into underestimating its risks. The Department concluded that Sigmen had engaged in substantial misrepresentation, the evidence supports its conclusion, and revocation was a permissible response.

## CONCLUSION

For the foregoing reasons, the superior court's refusal to set aside the Department's order of revocation is affirmed.

BROOKS, P.J., and TAYLOR, J., concur.