[No. 52557-9.   En Banc.   September 4, 1986.]

FLUKE CAPITAL & MANAGEMENT SERVICES COMPANY,
*Appellant,* v. VOLNEY RICHMOND III,
ET AL, *Respondents.*

*Jones, Grey & Bayley, P.S.,* by *Donald B. Myers, John E. Glowney,* and *S. Leigh Fulwood,* for appellant.

*Mussehl, Rosenberg, Grieff, Mussehl & Cotter,* by *Lawrence R. Besk* and *Jeffrey Michael Grieff,* for respondents.

UTTER, J.—Fluke Capital and Management Services Company lost its ownership interest in a piece of property during foreclosure by a holder of a first deed of trust. Fluke now seeks indemnification from Volney Richmond III and his marital community. We affirm the trial court's dismissal of the case.

In the late 1970's Richmond, the respondent, became involved in an attempt to develop a ski resort in the Snoqualmie Pass area when he invested in a piece of property with Glen Young. They purchased the property by purchasing the stock of a corporation, Mountain Grandeur, Inc. (MGI), holder of title to the property. Richmond and Young delivered a promissory note for $607,366.42 to the sellers of MGI, Michael Curtis and the Wedgewood Corporation. To secure the note Richmond and Young, as the new officers of MGI, had MGI execute a deed of trust on the property.

Fluke Capital and Management Services Company, the appellant, became involved in the development efforts as a creditor. Sometime after Richmond and Young purchased

MGI, Young approached Fluke Property Management Company (a general partnership that preceded appellant Fluke Capital and Management Services Company) to discuss investing in another corporation that he ran, Alpine World, Inc. Young planned that Alpine World would develop the Mountain Grandeur project. Fluke agreed to guarantee a loan of about $200,000 made by Peoples National Bank of Washington to Alpine World. As security for the guaranty Young had MGI execute for Fluke a second deed of trust on the Mountain Grandeur property. As further security MGI at the same time gave Fluke an option to purchase the property at any time for $1,090,000.

The development efforts failed and foreclosures began. Alpine World defaulted on its loan. Fluke honored its agreement to guarantee the loan and paid Peoples National Bank of Washington. Fluke then initiated a nonjudicial deed of trust foreclosure on its second deed of trust. At the trustee's sale in June 1981, Fluke purchased title to the Mountain Grandeur property, subject to the first deed of trust, for an amount equal to the amount of the debt it paid Peoples plus costs (approximately $280,000).

Richmond and Young also defaulted on their obligation to Curtis and Wedgewood (which had been succeeded in interest by First Interstate Bank). First Interstate Bank and Curtis[1] initiated a judicial foreclosure on the property in Kittitas County Superior Court. The plaintiffs named Richmond, Young,[2] MGI, and Fluke (who by then held title to the encumbered property) as codefendants.

In this second foreclosure proceeding Fluke asserted a cross claim against Richmond in its initial pleading. Fluke

---

[1]Because First Interstate Bank and Curtis have identical interests they will be referred to collectively as "First Interstate Bank."

[2]The Bankruptcy Court of the United States District Court for the Western District of Washington at Seattle discharged Glen Young and his marital community of any personal obligation in connection with the transactions at issue in the second foreclosure action. Accordingly, Fluke did not join Young as a defendant in this action.

claimed that it was a surety for Richmond, and that fore-closure was a proper remedy only after the Richmonds' assets had been exhausted for payment of the debt. The trial court denied Richmond's motion for a summary judgment dismissal of Fluke's claim. Later the court denied Fluke's motion for summary judgment on the claim.

Thereafter First Interstate Bank amended its pleadings to convert the lawsuit from a foreclosure to an action on the note. Deed of trust issues disappeared and venue changed to King County. Then First Interstate Bank again amended its pleadings to reconvert the lawsuit to a foreclo-sure action with a claim for a deficiency judgment. Venue changed back to Kittitas County. When Fluke filed its final set of pleadings it elected not to reassert its cross claim against Richmond. In a pretrial memorandum Fluke asserted a reservation of rights to pursue the claims of indemnification and subrogation in later proceedings.

In November 1983, the Kittitas court entered a judgment and decree of foreclosure in favor of First Interstate Bank. The court ordered that the Mountain Grandeur property be sold and the proceeds applied to the judgment against Richmond. In its order the court dismissed with prejudice all affirmative claims raised by the defendants, "provided that nothing in this paragraph shall affect any post–Judg-ment, statutory or equitable right of the Defendants." Clerk's Papers, at 375. The trial court entered judgment against Richmond for $484,691.85 principal and $161,053.12 interest. Fluke lost its interest in the property when it failed to bid above the amount for which the property was sold at a sheriff's sale, $343,836.31.

Fluke now seeks relief outside of the foreclosure actions. In April 1984, Fluke instituted this action against Rich-mond in King County Superior Court. Fluke concedes that its claim in this action is identical to its initial cross claim in the Kittitas County foreclosure. In December 1984, Judge Elston granted Richmond's motion for a summary

judgment dismissal. Apparently[3] Judge Elston reasoned that (1) collateral estoppel bars Fluke from reasserting its claim in this action, (2) a writing is necessary to establish a suretyship agreement, (3) Washington law does not support Fluke's assumption that a suretyship exists in the property itself, and (4) the equities favor Richmond, not Fluke, so Fluke's claim of subrogation must fail.

Fluke appealed the decision to Division One of the Court of Appeals. That court transferred the case to this court in March 1986. Although we reverse the trial court's rulings on collateral estoppel and the statute of frauds we affirm the dismissal of Fluke's action.

The parties dispute whether Fluke's lawsuit is barred by the doctrine of collateral estoppel. Collateral estoppel bars an action only if a prior adjudication is "sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13, at 132 (1982); Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 822 (1985). Here, contrary to Richmond's assertions, no conclusive decision was rendered on Fluke's initial suretyship cross claim. The trial court heard two pretrial motions on the claim; the court denied Fluke's motion for summary judgment and denied Richmond's motion for dismissal on summary judgment. Neither ruling can be characterized as a decision on the merits of Fluke's claim.

In addition, the doctrine of collateral estoppel applies only when an issue actually has been litigated and decided in a prior action.

When an issue of fact or law is *actually litigated and determined* by a valid and final judgment, *and* the determination is *essential to the judgment,* the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

(Italics ours.) Restatement, § 27, at 250. *See also Beagles v.*

---

[3]The court's record contains no record of Judge Elston's reasoning. However, the parties appear to agree on the reasoning that he used.

*Seattle–First Nat'l Bank,* 25 Wn. App. 925, 610 P.2d 962 (1980). Here, Fluke abandoned its cross claim of suretyship when the parties to the foreclosure action filed their final set of amended pleadings.[4] The claim was not even pending during trial or when the court made its final ruling. The issue of suretyship cannot be said to have been "actually litigated and determined." Nor was the issue of suretyship essential to the court's final decision in the foreclosure action. The court decided the enforceability of Richmond's obligation to First Interstate Bank, the validity of the deed of trust, and the priority of the liens on the property. The issue of Fluke's ability as a surety to seek indemnification from Richmond is not essential to any of those findings.

Richmond argues that RCW 19.72.140 compels a court to decide a question of suretyship before deciding the rest of the litigation, and that Fluke's suretyship therefore was a necessary issue of the court's final ruling. However, RCW 19.72.140 merely authorizes a court to determine suretyship before trial:

> When any action is brought against two or more defendants upon a contract, any one or more of the defendants being surety for the others, the surety *may, upon a written complaint* to the court, cause the question of suretyship to be tried and determined upon the issues made by the parties at the trial of the cause, or at any time before or after the trial, or at a subsequent term, but such proceedings shall not affect the proceedings of the plaintiff.

(Italics ours.) Here, no "written complaint to the court" requesting determination of the suretyship issue existed after First Interstate Bank filed its final pleadings. The court therefore had no mandate to rule on the suretyship issue.

Richmond also argues that Fluke's suretyship claim is

---

[4] When a party files an amended pleading that abandons a former cause of action the original pleading is considered abandoned and ceases to perform any function. *Hasan v. Frederickson,* 37 Wn. App. 800, 683 P.2d 203 (1984); *Ennis v. Ring,* 49 Wn.2d 284, 300 P.2d 773 (1956).

barred because the issue "could have and should have" been raised in the prior action. This argument is appropriate only under res judicata theory. Under the doctrine of res judicata, or claim preclusion, a claim decided in a prior action cannot be raised in a subsequent action. Restatement § 17. A claim includes "all rights of the [claimant] to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose", without regard to whether the issues actually were raised or litigated. Restatement § 24(1), at 196. *See Sanwick v. Puget Sound Title Ins. Co.,* 70 Wn.2d 438, 423 P.2d 624, 38 A.L.R.3d 315 (1967). *See also* Trautman, 60 Wash. L. Rev. at 813–19. In contrast, under collateral estoppel—or issue preclusion—only those issues actually litigated are barred. Restatement § 27. In this case Fluke abandoned its suretyship claim when it filed its final set of pleadings. Because Fluke abandoned its claim the doctrine of res judicata is inappropriate in this action (and in fact Richmond purports to rely only on the theory of collateral estoppel). Richmond's "could have and should have" argument, which is grounded in res judicata, thus must fail.

Richmond also suggests that the doctrine of "the law of the case" bars Fluke's claim. This argument has no merit. The law of the case doctrine applies only when an appellate court holding has issued in a prior appeal of the same case. *See Greene v. Rothschild,* 68 Wn.2d 1, 402 P.2d 356, 414 P.2d 1013 (1965); Trautman, 60 Wash. L. Rev. at 810. Also, the doctrine applies only to issues actually decided. *Riley v. Sturdevant,* 12 Wn. App. 808, 532 P.2d 640 (1975); Trautman, 60 Wash. L. Rev. at 811. Neither circumstance exists here.

The parties dispute whether a writing is required to prove a suretyship. This court has recognized that an implied promise to indemnify the surety by the principal can be enforceable without an express written agreement. *Leuning v. Hill,* 79 Wn.2d 396, 486 P.2d 87 (1971). Generally courts interpret the statute of frauds to require a writ-

ing only when it is the creditor who attempts to enforce a suretyship obligation against the surety. A. Stearns, *Suretyship* § 3.6 (5th ed. 1951). In this case Fluke is attempting to enforce a suretyship obligation against the principal, not a surety.

Finally, the parties dispute whether Fluke can prove a right to indemnification. Fluke appears to argue that two lines of reasoning support its claims against Richmond. None of Fluke's arguments, however, are persuasive.

■■ Fluke first claims that it can assert surety rights of MGI against Richmond. Fluke reasons that a suretyship arose when MGI executed a deed of trust to secure Richmond's debt. Fluke is partly correct. Generally, courts distinguish two types of suretyships: personal and real. *City Nat'l Bank & Trust Co. v. Pyle,* 25 Wn. App. 583, 609 P.2d 966 (1980). A "personal" suretyship obligates the surety personally to satisfy the obligation. In contrast, a "real" suretyship imposes an obligation only upon the land used as security. A real suretyship arises when property is pledged or mortgaged for a debt. A. Stearns, § 1.3, at 3. The obligation of the property owner is limited to the land itself. Restatement of Security § 83(c), comment *e* (1941). Here, Fluke is correct in arguing that MGI's transfer of the Mountain Grandeur property gave rise to a real suretyship.

However, Fluke next reasons that because the Mountain Grandeur property was a real surety Fluke acquired surety status by acquiring title to the property. This jump in logic is unsupportable. Fluke is claiming to be a personal surety. A personal suretyship arises only when a party assumes an obligation to pay another's debt. A. Stearns, *supra.* A personal suretyship is a consensual and contractual relationship that requires mutual assent. *National Bank v. Equity Investors,* 86 Wn.2d 545, 546 P.2d 440 (1976). Fluke has presented no evidence that it intended at any time to assume personal liability for Richmond's debt. This court will hold the transferee of land that is subject to a mortgage personally liable for the debt underlying that mortgage only upon clear and convincing proof of the assumption of the

debt. *Heggen Constr. Co. v. Turalba,* 88 Wn.2d 711, 565 P.2d 420 (1977). In the absence of further proof Fluke cannot argue that its purchase of the property subject to a deed of trust was equivalent to an agreement to assume personal liability for Richmond's debt.

Fluke cites *MGIC Fin. Corp. v. H.A. Briggs Co.,* 24 Wn. App. 1, 600 P.2d 573 (1979) to support its argument that it succeeded to MGI's suretyship status by purchasing the Mountain Grandeur property. The *MGIC* case does not support this argument. The *MGIC* case involved a junior lienor's succession to the rights of a senior lienor. Here, MGI was not a senior lienor. The *MGIC* case thus does not in any way support Fluke's argument that Fluke can succeed to a surety position held by MGI.

However, Fluke next argues that it is entitled to subrogation to the claims and judgment of First Interstate Bank, the senior lienor. "Subrogation is the substitution of one person to the position of another, an obligee, whose claim he [or she] has satisfied." G. Osborne, *Mortgages* § 277, at 561 (2d ed. 1970).

*MGIC Fin. Corp. v. H.A. Briggs Co., supra,* is relevant to this argument. At issue in that case was the protection of the security interest of a holder of a second deed of trust. The court stated that the junior lienor had the right to (1) pay off the debt secured by the senior mortgage, and (2) then stand in the shoes of the senior lienor and assert that party's rights, which could include personally suing the mortgagor. 24 Wn. App. at 6.

As the *MGIC* case suggests, the key to Fluke's ability to subrogate itself to the rights of the senior lienor is payment of the debt owed by Richmond. A junior lienor can succeed to the rights of a senior lienor only by paying off the debt owed to the senior lienor. As one treatise says,

> Another group of cases in which the right of subrogation is not questioned is that in which a person, although not personally bound to pay, is compelled to do so in order to protect some interest of his [or her] own. . . . Thus a junior mortgagee may pay off a prior mortgage

and be subrogated to all rights under it against the mortgagor.

G. Osborne, § 279, at 565. This court recognized this same principle when it said:

It has, furthermore, been long recognized that when a surety, to protect his interests, discharges an obligation the primary responsibility for which rests with the principal obligor, an implied promise to indemnify or reimburse the surety comes into being on the part of the principal, which implied obligation, as such, is enforceable by the surety against the principal.

*Leuning v. Hill,* 79 Wn.2d 396, 400, 486 P.2d 87 (1971). *See also Livingston v. Shelton,* 85 Wn.2d 615, 620, 537 P.2d 774 (1975), *cert. denied,* 424 U.S. 958 (1976); *In re New England Fish Co.,* 749 F.2d 1277, 1282 (9th Cir. 1984).

Here, Fluke apparently reasons that it has "paid" First Interstate because Fluke lost its interest in the Mountain Grandeur parcel when the parcel was sold and the proceeds applied against Richmond's obligation. Fluke cannot make this claim. When Fluke acquired title to the Mountain Grandeur property the parcel already secured Richmond's obligation of more than $600,000. None of Fluke's own assets ever were applied against this debt.

When First Interstate Bank foreclosed upon the Mountain Grandeur property Fluke could have protected its own interest by paying off Richmond's obligation to First Interstate Bank. Fluke also could have protected its interest by bidding an amount higher than the sale price at the sheriff's sale or by exercising its right to redemption after the sale. Instead, Fluke relinquished all of its rights in the property. Fluke allowed the "real" surety—the property—to pay the debt. Fluke cannot now claim that it possesses the rights of a "personal" surety.

We agree with the trial court that the equities of the case favor Richmond. *Cf. Transamerica Title Ins. Co. v. Johnson,* 103 Wn.2d 409, 417, 693 P.2d 697 (1985). Fluke assumed the risk of loss that it now suffers. Fluke took a second deed of trust on the Mountain Grandeur parcel even

though the first deed of trust secured a $600,000 obligation. Fluke paid $280,000 for a piece of encumbered property once valued at over one million dollars. Any business person in Fluke's position would know that if the prior lienor foreclosed Fluke would either have to pay more or lose the property.

Moreover, Fluke limited its own remedies when it nonjudicially foreclosed on the second deed of trust. Under Washington law, a creditor that holds a deed of trust as security for a loan can use either judicial or nonjudicial procedures to enforce that security. The remedies of a creditor who chooses nonjudicial procedures are limited to foreclosure alone:

> [Nonjudicial] [f]oreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and no deficiency decree or other judgment shall thereafter be obtained on such obligation. . . .

RCW 61.24.100. Here, Fluke chose to rely solely on the value of the Mountain Grandeur parcel to remedy the default by Alpine World. The value of the land dropped, however, and cannot cover the obligations of both Alpine World and Richmond. Fluke cannot now turn around and try to recover its losses from Richmond's personal assets.

Fluke's only contention is that it should not lose the property when Richmond is capable of paying his obligation to First Interstate Bank. This argument is not persuasive. Richmond protected himself from personal liability by having MGI use the Mountain Grandeur property as security. Richmond's personal financial worth cannot now affect his contractual relationships.

Richmond cross–appeals the trial court's refusal to award attorney fees against Fluke. Richmond claims three grounds for an award: (1) an attorney fees provision in the guaranty agreement executed between Fluke and Alpine World, (2) an attorney fees provision in the promissory

note that obligates Richmond to First Interstate Bank, and (3) RCW 4.84.185, which authorizes awards of attorney fees for frivolous lawsuits. We will not consider the first two arguments because Richmond has raised them for the first time on appeal. RAP 2.5(a).

We affirm the trial court's refusal to award attorney fees under RCW 4.84.185 for two reasons. First, RCW 4.84.185 does not apply in this case. RCW 4.84.185 authorizes a court to award attorney fees against a nonprevailing party "upon final judgment and written findings . . . that the action . . . was frivolous and advanced without reasonable cause". However, the statute also provides that "[t]his determination shall be made upon *post–trial* motion". (Italics ours.) This language indicates that RCW 4.84.185 does not authorize an award of attorney fees on a *pretrial* motion. Richmond requested attorney fees pursuant to a pretrial motion for summary judgment dismissal. The trial court properly refused to award attorney fees.

■ Second, this court has held that an award of attorney fees that is authorized by statute is left to the trial court's discretion and will not be disturbed "in the absence of a *clear* showing of abuse of discretion". *Marketing Unlimited, Inc. v. Jefferson Chem. Co.*, 90 Wn.2d 410, 412, 583 P.2d 630 (1978). *See also Meyer v. UW*, 105 Wn.2d 847, 719 P.2d 98 (1986). This standard of review is appropriate for decisions under RCW 4.84.185. However, Richmond has not proven that the trial court's refusal to award fees constituted an abuse of discretion.

■ Finally, Richmond requests an award of attorney fees pursuant to RAP 18.9(a), which authorizes sanctions for frivolous appeals. Because the appeal raises issues on which reasonable minds might differ we decline to award attorney fees. *See Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 508–11, 716 P.2d 869 (1986).

Fluke cannot seek indemnification from Richmond when Fluke has never used its own assets to pay a debt owed by

Richmond. The judgment of the trial court is affirmed.

DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, ANDER-SEN, GOODLOE, and DURHAM, JJ., and VERHAREN, J. Pro Tem., concur.

Reconsideration denied December 8, 1986.