William A. MATTHEWS, Vern Nelson, William W. Ogg, Ronald R. Pomeroy, and Illinois Mutual Life and Casualty Company, an Illinois corporation, Plaintiffs–Appellants,

v.

H.E. SALEEN and Jeanne L. Saleen, Defendants–Appellees,

and

B.F. Girard Avenue Associates and Benjamin Foster, Third–Party Defendants–Appellees.

No. 90CA301.

Colorado Court of Appeals, Div. IV.

May 23, 1991.

Marsh & Kolko, Richard A. Marsh, David L. Kolko, Denver, for plaintiffs-appellants.

Isaacson, Rosenbaum, Woods & Levy, P.C., Edward T. Ramey, Juli E. Lapin, Denver, for defendants-appellees.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Kristen Mix Myer, Michael Westover, Denver, for third-party defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs, William A. Matthews, Vern Nelson, William W. Ogg, Ronald R. Pomeroy (the individual plaintiffs), and Illinois Mutual Life and Casualty Company (Illinois Mutual), appeal the summary judgment entered for defendants, H.E. and Jeanne L. Saleen, and the denial of plaintiffs' motions to amend the complaint and for post-trial relief. We reverse and remand with directions.

## I.

In November 1979, Eaton Associates, a Colorado limited partnership, made and delivered a $700,000 promissory note to Megapolitan Mortgage Company (Megapolitan). Thomas L. Hartley, as managing partner of Eaton Land and Cattle Co. II (Eaton Land), a general partner of Eaton Associates, executed the note. The individual plaintiffs, who were limited partners of Eaton Associates, signed the note as guarantors, each agreeing to pay up to one-sixth of the outstanding indebtedness or $40,000, whichever was greater. The note was secured by a deed of trust on real estate owned by Eaton Associates (the property).

In December 1979, Megapolitan assigned the Eaton note to Illinois Mutual, and Illinois Mutual has remained the holder of the note.

In October 1980, the Saleens purchased the property from Eaton Associates, the limited partnership. The Saleens received a warranty deed and agreed to assume the obligations of the Eaton note and deed of trust. Illinois Mutual as holder consented to the transfer and obtained an acknowledgment from the individual plaintiffs of their continuing liability as guarantors on the note.

In November 1981, the Saleens sold the property to Technical Equities Corporation by warranty deed, and Technical Equities agreed to assume the Eaton note and deed of trust. In connection with the sale and on the same date, Illinois Mutual as holder, Technical Equities as buyer, and the Saleens as sellers entered into an assumption and modification agreement (the assumption agreement) by which Illinois Mutual released the Saleens from all liability under the note and consented to Technical Equities' assumption of the obligations under the note.

The assumption agreement provided that:

> "The terms and conditions of this agreement shall in no way prejudice the rights of the holder to pursue its legal rights and remedies against the original or prior assuming parties to the promissory note and deed of trust."

As evidence that Illinois Mutual was releasing the Saleens from all obligations

arising from the note, the following paragraph was deleted from the assumption agreement:

> "[The Saleens] acknowledge that they continue to be and remain liable for payment of the promissory note and performance of all terms and conditions of the promissory note and deed of trust notwithstanding the purchaser's assumption agreements contained therein."

In December 1981, Technical Equities sold the property by warranty deed to Pizza Associates which, through its general partners, William D. Kay and Mathias A. Summers, agreed to assume the Eaton note and deed of trust. Pizza Associates then sold the property to third-party defendant B.F. Girard Avenue Associates (Girard) by warranty deed, and Girard, through its general partner Benjamin Foster, agreed to assume the Eaton note and deed of trust.

Girard then defaulted on the note and Illinois Mutual foreclosed on the property. At the foreclosure sale, Illinois Mutual bid $600,000 for the property leaving a deficiency of $257,652.12. Thereafter, Illinois Mutual demanded $40,000 from each of the individual plaintiffs based on their personal guarantees. In exchange for a release, each of the four individual plaintiffs paid Illinois Mutual $40,000 or equivalent consideration leaving a deficiency on the note of $97,652.12.

The individual plaintiffs and Illinois Mutual then filed this action. Illinois Mutual concedes that it released the Saleens from any continuing personal liability on the note and deed of trust and did not assert any claims against the Saleens. Rather, it sued the maker of the note which included Eaton Associates, Eaton Land, and Thomas Hartley (the Eaton defendants) for the deficiency balance on the note. During the course of the proceedings, the Eaton defendants filed bankruptcy.

The individual plaintiffs sued the Saleens for reimbursement or contribution for the amounts paid to Illinois Mutual. The Saleens denied any liability to the individual plaintiffs, but filed a third-party complaint against Girard and Benjamin Foster seeking reimbursement or contribution in the event they were found liable to the individual plaintiffs.

On the day of trial, the plaintiffs filed a motion to amend the complaint to join Girard and Foster as additional party-defendants, which the court denied. At the same time, the court vacated the trial date after the parties agreed to submit cross-motions for summary judgment based upon stipulated facts and exhibits.

After considering the parties' briefs, the trial court found: (1) Illinois Mutual released the Saleens from all obligations under the note and deed of trust in November 1981; (2) when Illinois Mutual entered into the assumption agreement with the Saleens it forfeited its rights to enforce or collect from the sureties (the individual plaintiffs) because it released its principal debtor (the Saleens) from all liability under the note and did so without notice to the individual plaintiffs and without their consent; and (3) Illinois Mutual's reservation of its rights contained in the assumption agreement was invalid because Illinois Mutual's release of the Saleens had diminished the individual plaintiffs' security without their consent. Based on these findings, the court granted the Saleens' motion for summary judgment.

The plaintiffs' motions for post-trial relief were denied.

## II.

### RELATIONSHIP BETWEEN INDIVIDUAL PLAINTIFFS AND SALEENS

A grantee who assumes and agrees to pay an existing encumbrance upon receiving title to real property becomes a principal and the grantor becomes a surety. *Ruther v. Thomas,* 43 Colo.App. 435, 604 P.2d 703 (1979). Thus, when Eaton Associates sold the real estate to the Saleens and the Saleens assumed Illinois Mutual's note, the Saleens became the principal obligor on the note and deed of trust, and the limited partnership became a surety. The individual plaintiffs remained guarantors. Similarly, when the Saleens sold the property,

Technical Equities became the principal obligor, and the Saleens became sureties. At the time of the default, Girard was the principal obligor and all the past owners were sureties.

### III.

### DISCHARGE OF SURETY

Section 4–3–606, C.R.S., of the Uniform Commercial Code addresses the circumstances under which a surety is discharged. It states:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has, to the knowledge of the holder, a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person; except, that failure or delay in effecting any required presentment, protest, or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest, or notice of dishonor is effective or unnecessary....

(2) By express reservation of rights against a party with a right of recourse the holder preserves:

(a) All his rights against such party as of the time when the instrument was originally due; and

(b) The right of the party to pay the instrument as of that time; and

(c) All rights of such party to recourse against others."

■ In sum, if a creditor or holder (Illinois Mutual) discharges a principal obligor (the Saleens) without reserving its rights against the surety (the individual plaintiffs), *or* without obtaining the surety's consent to remain liable, the release also discharges the surety. *See Fisher v. Denver National Bank*, 22 Colo. 373, 45 P. 440 (1896). *See also Security National Bank v. Continental Insurance Co.*, 586 F.Supp. 139 (D.Kan.1982).

### IV.

### RESERVATION OF RIGHTS

■ All parties agree that Illinois Mutual discharged the Saleens in the assumption agreement. However, the individual plaintiffs claim that inasmuch as Illinois Mutual expressly reserved its rights against them in the assumption agreement, the individual plaintiffs remained liable on their obligation to Illinois Mutual. Similarly, they claim that the Saleens' obligation to the individual plaintiffs remained intact. We agree with the individual plaintiffs that the Saleens' obligation to them was not altered by the assumption agreement.

At common law, it was recognized that when a party entitled to payment granted an extension of time for payment to the principal obligor or made other such concessions which impaired the collateral, without first obtaining the surety's consent, the surety was released. *See Drescher v. Fulham*, 11 Colo.App. 62, 52 P. 685 (1898). *See also Moss v. McDonald*, 772 P.2d 626 (Colo.App.1988). The rationale for this rule was that the payee's action impaired the surety's rights and therefore the surety was discharged from any further obligation.

Under § 4–3–606(2), C.R.S., a creditor may release a principal debtor but expressly reserve its right to proceed against a surety, and in such circumstances, the surety is not discharged by the release. *See McAllister v. People*, 28 Colo. 156, 63 P. 308 (1900) (surety was not discharged where the obligee expressly reserved its remedy against the surety by taking a judgment against him). *See also Security National Bank v. Continental Insurance Co., supra.*

Of importance here is that this code section contains no requirement that the party against whom the rights are reserved (here, the individual plaintiffs) receive notice of the reservation or consent to it. In W. Hawkland, J. Leary, R. Alderman, *Uniform Commercial Code Series* § 3–606:07 (1990), the rationale behind the UCC's provision for express reservation of rights is explained:

"A holder can release, grant an extension to or otherwise discharge a person without discharging a party who has a right or recourse against such person if the holder expressly reserves his rights against the party seeking the discharge. By releasing or discharging a person or granting him an extension, the holder cannot maintain an action against that person. *But by expressly reserving his rights the holder preserves all of his rights as against the party as to whom the rights were reserved.* For instance, if the holder grants the maker an extension while reserving his rights against the indorser, the holder may sue the indorser on the instrument. The indorser against whom the rights are reserved may proceed as if the release, discharge or extension did not exist. He is permitted to pay the instrument on the original date due. After payment, he is entitled to all of the holder's rights of recourse against all other parties as if no release, discharge or extension had occurred.

. . . .

At the time this section was drafted, sentiment was expressed concerning the unfairness to the party released or granted the extension of permitting the holder to expressly reserve his rights against the other parties. Banking interests successfully convinced the drafters to retain the provision. The banks argued that it was standard practice among banks to reserve rights against the indorser when granting an extension to a maker since it was often hard to locate the indorser to obtain his consent.

. . . .

*There is no requirement that the party as against whom the rights are reserved receive notice of reservation.* A provision in an earlier draft providing for such notice to the party was deleted. . . ." (emphasis added)

In the instant case, the trial court understandably relied on *Moss v. McDonald, supra,* and ruled that Illinois Mutual's express reservation of rights "had no effect"

because "it diminishes the individual plaintiffs' security without their consent." We also presume that the trial court's interpretation of § 4–3–606(2), C.R.S., was based on the official comment accompanying that section which states:

"Subsection (2), which is new, states the generally accepted rule as to the effect of such an express reservation of rights *which to be effective must be accompanied by notification to any party against whom rights are so reserved (subsection (3)). . . .*" (emphasis added)

Section 3–606(3) of the 1952 official text of the Uniform Commercial Code did indeed require the creditor to give notice to the surety when the creditor expressly reserved his rights against the surety. That subsection stated:

"An express reservation of rights is not effective as such as against any party whom the holder does not use due diligence to notify within ten days after the reservation."

However, subsection (3) was deleted from the 1958 official text in response to criticism, and it was never adopted in Colorado. *See* J. White & R. Summers, *Uniform Commercial Code* § 13–15 n. 140 (2d ed. 1980). Thus, the comment to § 4–3–606(2), C.R.S., is misleading because it alludes to a requirement of notice and refers to the nonexistent subsection (3).

In *Hallowell v. Turner,* 95 Idaho 392, 509 P.2d 1313, 1315 (1973), the Idaho Supreme Court interpreted a provision in the Idaho code and a comment identical to our § 4–3–606(2) and held that:

"Notification to the party against whom rights are reserved is not a prerequisite to the validity of a reservation of rights.

. . . .

The part of paragraph 4 of the official comment . . . referring to subsection (3) should be disregarded."

We agree with this interpretation of § 4–3–606(2) and therefore conclude that, insofar as the comment to § 4–3–606(2), C.R.S., refers to notification and a subsection (3), that portion of the comment should

be disregarded. Applying that principle to the instant case, we hold that notice to the individual plaintiffs and the individual plaintiffs' consent to Illinois Mutual's reservation of rights was not required by § 4-3-606(2).

We do not believe that *Moss v. McDonald, supra*, compels another result. First, the factual situation in *Moss* is distinguishable. There, the creditor granted an extension of time for payment to the principal obligor without first obtaining the sureties' consent. Significant to the *Moss* ruling is that the language of the note there specifically required the creditor to obtain consent of all sureties to any extension given. Since the record clearly supported the trial court's finding in *Moss* that no consent was given, this court affirmed the trial court's ruling discharging the sureties from all obligations under the note.

Additionally, in *Moss*, the court primarily relied on § 4-3-606*(1)* and the long standing principle prohibiting the granting of extensions of time without consent of the surety. *See Drescher v. Fulham*, 11 Colo. App. 62, 52 P. 685 (1898).

In contrast, here we are primarily construing § 4-3-606*(2)*, and resolving a different issue, which is whether that section requires notification and consent as a prerequisite to an express reservation of rights. *See Hallowell v. Turner, supra.* We hold that no such notification or consent is required and, insofar as the decision in *Moss* may be construed to interpret § 4-3-606(2) differently, we decline to follow it.

## V.

### CONCLUSION

In sum, we conclude that Illinois Mutual's express reservation of rights was effective. Thus, any obligation which was previously owed by the Saleens to the individual plaintiffs remained intact and the trial court erred in granting summary judgment in favor of the Saleens. In view of our ruling here, we need not consider plaintiffs' additional contentions.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion. Because we are unable to determine from the record before us the exact nature or extent of the individual plaintiffs' right to contribution from the Saleens or the Saleens' right to contribution from third-party defendants, the cause is remanded to the trial court for determination of those issues. On remand, the trial court may determine that additional new parties and amendment of the pleadings are necessary.

HUME and REED, JJ., concur.