[No. 10440-1-III. Division Three. February 4, 1992.]

FIRST INTERSTATE BANK OF WASHINGTON, N.A., ET AL, *Plaintiffs*, v. NELCO ENTERPRISES, INC., ET AL, *Respondents*, WESTERN FRONTIERS, INC., ET AL, *Appellants*.

*Richard D. McWilliams* and *Paine, Hamblen, Coffin, Brooke & Miller; Diane M. Hermanson, Leslie R. Weatherhead,* and *Witherspoon, Kelley, Davenport & Toole, P.S.,* for appellants.

*Mike R. Johnston* and *Johnston & Roach, P.S.,* for respondents.

THOMPSON, J. — Western Frontiers, Inc.,[1] and Magnuson Limited Partnership (collectively Joint Venture) appeal a judgment ordering them to indemnify and hold harmless certain individuals and BNS Associates (collectively Nelson Group) from liability on two promissory notes. We reverse.

In 1973, Nelson & Gale, Inc., obtained a loan for constructing a Holiday Inn in Richland. Nelco Enterprises, Inc., was spun off for purposes of owning and operating the Inn.

---

[1]Western Frontiers, Inc., is now Hagadone Hospitality, Inc.

In 1977, the loan was rewritten to finance expansion. Two promissory notes in the face amount of $1,850,000 each were signed by both corporations (collectively Nelco) and their shareholders (Nelson Group), as comakers. The notes were secured, in part, by a deed of trust on the Holiday Inn. At the time of trial, one note was held by First Interstate Bank of Washington, N.A., and the other by Washington Mutual Savings Bank (Banks).

Nelco and Nelson Group defaulted on the notes in June 1982 and a buyer for the Holiday Inn was sought. The Joint Venture agreed to purchase it for $4,122,000.

Nelco and the Joint Venture entered into two sale contracts. The first required the Joint Venture to make monthly installments until early 1985, at which time it was to pay the balance in two balloon payments. This contract was executed and recorded in order to allow Nelco to benefit from federal income tax advantages that would result from the installment sale. A fulfillment deed and the contract were placed in escrow. The second sale contract, described as a "supplemental" contract, gave the Joint Venture the option of assuming the two underlying loans in lieu of making the balloon payments. In order to avoid scrutiny by the Internal Revenue Service, the supplemental contract was not recorded and the corresponding fulfillment deed was retained by the closing attorney.

The sale to the Joint Venture closed in December 1982. The cash down payment of $573,800 was used, in part, to cure the delinquency on the notes.

A few months later, in the summer of 1983, the Joint Venture decided to sell the Holiday Inn. A buyer was found: Henry Taylor and Richland Associates (collectively Richland Associates). In compliance with the 1982 contract, the Joint Venture requested the sellers' consent to resell. On November 7, 1983, a letter was sent to the Joint Venture indicating consent would be given if the sellers' remaining equity in the contract were paid in full. Richland Associates agreed to assume the underlying notes and provided Banks with information regarding their financing. Banks approved the

assumption, subject to certain express conditions. The sale to Richland Associates closed December 27, 1983, 12 days after Nelson & Gale, Inc., was dissolved. Nelco Enterprises, Inc., dissolved January 6, 1984.[2]

Richland Associates subsequently defaulted on the notes. Banks accelerated payment on the notes, commenced an action to foreclose their deed of trust, and demanded a deficiency judgment against Nelco, Nelson Group, the Joint Venture and Richland Associates. Banks alleged the Joint Venture had assumed and guaranteed the notes, but later amended the complaint to allege the Joint Venture purchased "subject to" the notes. In May 1989, Nelco and Nelson Group were permitted to file a cross claim against the Joint Venture.

A bench trial commenced in September 1989. BNS Associates was added as a party by oral motion made during closing argument. The court allowed the request for foreclosure and awarded judgment to Banks against Nelco, Nelson Group, the Joint Venture, and Richland Associates, jointly, in the amount of $4,623,811.83. In awarding the judgment, the trial court found that the Joint Venture had not purchased the Holiday Inn subject to the notes as alleged by Banks in their amended complaint, but had assumed the notes as alleged in the original complaint. Nelson Group was awarded judgment on the cross claim against the Joint Venture.

The Joint Venture appealed both the judgment in favor of Banks and the judgment in favor of Nelson Group. The judgment in favor of Nelson Group and against the Joint Venture was subsequently amended to include the sum of $53,294.52 for attorney fees and costs incurred in defending against Banks' claims on the notes. Nelson Group appealed

---

[2]The dissolution of both corporations was voluntary. The trial court found the assets of both corporations, including their rights under the 1982 contract with the Joint Venture, were assigned to the shareholders through the receiving vehicle of BNS Associates, a partnership. It is not clear when this occurred, but the record contains a letter dated December 7, 1983, in which BNS notified one of Banks of the assignment.

the judgment in favor of Banks. Banks settled with the Joint Venture and apparently with Nelson Group. A full satisfaction and release of Banks' judgment was entered. The Joint Venture's appeal was thereby limited to the judgment entered against it on the cross claim of Nelson Group. Nelson Group's appeal became moot and they remain solely as respondents.

The Joint Venture assigns error to the trial court's conclusion it assumed Banks' notes in 1983 when it sold the Holiday Inn to Richland Associates.[3] It contends an assumption of a mortgage obligation must be proven by clear, cogent and convincing evidence and the trial court relied only on erroneously arrived at inferences, and parol evidence contradicting unambiguous written agreements.

Nelson Group agrees the applicable burden of proof requires clear, cogent and convincing evidence, but contends the burden was met without resort to inferences, and although parol evidence was admitted, it did not contradict any unambiguous written agreements.

■ A purchaser who assumes a mortgage is personally obligated to pay the mortgage debt. *E.g., Pease v. Stephens,* 173 Wash. 12, 21 P.2d 294 (1933). As between purchaser and seller, the seller becomes the surety upon assumption, and the purchaser becomes the principal mortgage debtor.[4] *Gillman v. Purdy,* 167 Wash. 659, 9 P.2d 1092 (1932); *Continental Mut. Sav. Bank v. Elliott,* 166 Wash. 283, 6 P.2d 638, 81 A.L.R. 1005 (1932); *Federal Land Bank v. Miller,* 155 Wash. 479, 284 P. 751 (1930). *See also Hemenway v. Miller,* 116 Wn.2d 725, 728-29, 807 P.2d 863 (1991). Some-

---

[3]The question whether the Joint Venture assumed the notes remains an issue, notwithstanding the parties' settlement with Banks. Without an assumption, the Joint Venture would have no obligation, by operation of law, to indemnify the makers of the notes, nor would it have a contractual obligation to hold Nelson Group harmless from any claim or liability on the notes pursuant to the terms of the 1982 contract.

[4]Although the real property security devise at issue is a deed of trust, the issues presented in this appeal do not require a distinction between a mortgage and a deed of trust.

times referred to as a "personal suretyship", if the surety discharges the principal's personal obligation, the surety is entitled to indemnification from the principal. *Leuning v. Hill*, 79 Wn.2d 396, 400, 486 P.2d 87 (1971).[5]

■ Proof of assumption of an underlying mortgage debt must be clear and convincing. *Fluke Capital & Mgt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 621, 724 P.2d 356 (1986). Simply describing the debt in a deed, without additional proof, is insufficient evidence of assumption. *Heggen Constr. Co. v. Turalba*, 88 Wn.2d 711, 716, 565 P.2d 420 (1977).

In reaching its conclusion that the Joint Venture assumed the notes with Banks (the underlying debt), the trial court relied on the Joint Venture's acceptance of the warranty fulfillment deed from Nelco as part of the 1983 sale to Richland Associates, together with the testimony of the closing attorney and a Nelco shareholder.[6] We find this evidence is neither clear nor convincing.[7]

By its terms, the 1982 supplemental contract gave the Joint Venture the option of assuming the notes in 1985 or making two balloon payments. However, the Joint Venture sold the property to Richland Associates in 1983, before the balloon payments were due. The sale occurred with the

---

[5]As stated in *Fluke Capital & Mgt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 621, 724 P.2d 356 (1986), courts have distinguished two types of suretyships: personal and real. A real suretyship imposes an obligation only upon the land used as security and is not at issue in this appeal.

[6]Conclusion of law 4 states:
"The evidence is clear and convincing that MLP and WFI [the Joint Venture] assumed liability for the indebtedness on the Notes and Deed of Trust upon accepting the warranty fulfillment deed from Nelco and Nelson & Gale in 1983 and pursuant to the supplemental agreement, and thereupon became directly obligated to the holders of the Notes. Nelco, Nelson & Gale and the Nelson Group at the same time became sureties of the obligations of MLP and WFI [the Joint Venture] on the Notes."

[7]Findings of fact 49 through 64, upon which the conclusion is based, are not supported by substantial evidence. Even if they were, an appellate court independently determines whether findings of fact supported by substantial evidence are sufficient to support a conclusion of law. *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 797 P.2d 477 (1990).

knowledge and consent of Nelco. A letter was sent to the Joint Venture indicating permission would be given for a sale if the shareholders' remaining equity were paid in full. The Joint Venture paid the agreed amount and payment was accepted. Nelco signed a document entitled "Letter of Instruction" which contained a recitation that the 1982 contract had been satisfied.[8] The security agreements given to Nelco by the Joint Venture were released and, according to Banks' records, Richland Associates assumed the notes directly from Nelco. Thus, the Joint Venture was no longer involved.

The trial court's own statements illustrate the limited evidence supporting the assumption claim. After Banks rested, the Joint Venture moved for "directed verdict". The trial court denied the motion but stated, "I believe that the assumption is still up for grabs." The court's memorandum opinion is also relevant:

> Turning now to the many issues posed, the Court reiterates that the case is greatly complicated because the parties and their counsel failed to see that the intent of the parties were [sic] clearly stated and communicated. This requires the Court, as the trier of the fact to determine from the totality of the evidence what is "more probably true than not true." In performing this function, the Court is well aware that there is evidence (documentary or other) to support the opposite view.

Nelson Group failed to meet its burden of proving the Joint Venture assumed the notes. In fact, the documents and testimony quite clearly prove the contrary. Under the contract, the time had not yet arrived when the Joint Venture had to make the election between assumption or balloon payment. When the new agreement was reached with Richland Associates, the contract ceased to exist. Absent assumption of the notes by Joint Venture, Nelson Group did

---

[8]The closing attorney testified the letter was prepared in order to close the escrow and obtain release of the deed. However, the escrow could have been closed by mutual agreement, without a recitation that the contract had been satisfied. Thus, even if parol evidence was admissible to interpret the unambiguous letter, it is insufficient to support Nelson Group's contention.

not become sureties. Absent assumption, Nelson Group had no indemnity rights pursuant to the provisions of the 1982 contract.[9] We thus need not address the other assignments of error.

We reverse the judgment against Joint Venture.

SHIELDS, C.J., and MITCHELL, J. Pro Tem., concur.

---

[9]Paragraph 5 of the 1982 contract provided in part:

"Upon assumption of the promissory notes the Purchasers agree to pay each note according to its terms and the Purchasers shall hold the Sellers harmless from any claim or liability arising from the promissory notes or the security agreements after the date of the assumption of the notes."