Marie O. SWANSON, Appellant,

v.

Thomas KRENIK and Leila
Krenik, Appellees.

No. S–5315.

Supreme Court of Alaska.

Feb. 11, 1994.

Ernest Z. Rehbock, Anchorage, for appellant.

Bernd C. Guetschow, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

This case presents a single legal issue regarding the rights between an original mortgagor/grantor and the first grantee of real property when the second grantee defaults. The superior court ruled that the original mortgagors, the Kreniks, were subsureties and therefore entitled to indemnification from the first grantee, Marie Swanson. On appeal, Swanson argues that she and the Kreniks became cosureties when the second grantees assumed the mortgage obligation. Swanson contends that, as a cosurety, she is entitled to contribution from the Kreniks for a proportionate share of the deficiency judgment resulting from the default.

We affirm.

### I.

The facts are not in dispute. In 1977 Thomas Krenik and Leila Krenik executed a promissory note secured by a deed of trust on their property in favor of the Alaska Federal Savings and Loan Association of Juneau (Alaska Federal).

In 1981 the Kreniks conveyed the property to Keith Swanson and Marie Swanson, who assumed the Alaska Federal note and deed of trust. Alaska Federal consented to this assumption without releasing the Kreniks.

The Swansons also executed a second deed of trust in favor of the Kreniks.

In August 1983, Marie Swanson[1] conveyed the property to Ray Rush and Howard Luther, Jr. With the consent of all parties, Rush and Luther assumed the Alaska Federal note and deed of trust as well as the second deed of trust. Rush and Luther executed a third deed of trust in favor of Swanson.

In 1986 Rush and Luther defaulted on the Alaska Federal obligation. In 1988 Alaska Federal filed suit against the Kreniks, Swanson, and Rush and Luther, seeking judicial foreclosure. Both Rush and Luther filed for bankruptcy in 1989. Swanson then filed a cross-claim against the Kreniks, alleging that she and the Kreniks were "joint co-debtors" and therefore jointly liable for any deficiency judgment. In turn, the Kreniks filed a cross-claim against Swanson, seeking entry of judgment against her based on the 1981 assumption agreement.

Superior Court Judge Brian Shortell granted Alaska Federal's motion for summary judgment in its foreclosure action on the first deed of trust. The court issued a decree of foreclosure and sale of real property and entered final judgment.

In the following months, both Swanson and the Kreniks moved for summary judgment on their respective cross-claims. Swanson argued that she and the Kreniks became cosureties when Rush and Luther assumed the mortgage debt. The Kreniks maintained that Swanson had no right of contribution from them and that Swanson had a duty to indemnify them for any amounts they were forced to pay Alaska Federal.[2] The court ruled in favor of the Kreniks.

After the foreclosure sale, the court issued a deficiency judgment to Alaska Federal against both Swanson and the Kreniks for a sum of $1,173,992. Swanson paid the judgment. This appeal followed.

## II.

This case presents no disputed issues of material fact and may be resolved as a matter of law. *See* Alaska R.Civ.P. 56; *Drake v. Hosley,* 713 P.2d 1203, 1205 (Alaska 1986). We review a question of law de novo and adopt the rule of law that is most persuasive in light of precedent, reason and policy. *Foss Alaska Line, Inc. v. Northland Servs.,* 724 P.2d 523, 526 (Alaska 1986).

## III.

As both parties in this case recognize, when an original mortgagor transfers mortgaged land to a grantee who assumes the mortgage, the assuming grantee becomes the principal mortgage obligor and the mortgagor becomes a surety. Restatement of Security § 83(c) and cmt. e (1941); *see also First Interstate Bank v. Nelco Enters.,* 64 Wash.App. 158, 822 P.2d 1260, 1263 (1992); *Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.,* 166 Ariz. 500, 803 P.2d 911, 912 n. 3 (App.1990); *Moss v. McDonald,* 772 P.2d 626, 627 (Colo.App.1988); Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 5.10, at 283–84 (1985).

The parties agree that in 1981 the Swansons expressly assumed the Kreniks' mortgage obligation under the Alaska Federal note and deed of trust. The assumption agreement states in part that the Swansons "assume and agree to pay the [Kreniks'] indebtedness evidenced by the Note and Deed of Trust, and to perform all of the obligations provided therein." In 1981, therefore, the Swansons became the principal obligors on the debt. The Kreniks, who were not released from their obligation to Alaska Federal, became sureties. In the event of a default by the Swansons, Alaska Federal retained its right of recourse against both the Swansons and the Kreniks for any amount outstanding on the loan. If the Kreniks satisfied any amount due, their status as sureties would entitle them to indemnification from the Swansons. *See First Interstate Bank,* 822 P.2d at 1263 (if the surety discharges the mortgage debt, it is entitled to

---

**1.** Keith Swanson died in March 1983.

**2.** The Kreniks also sought summary judgment against Swanson based on the second deed of trust.

indemnification from the assuming grantee). Conversely, the Swansons would not be entitled to indemnification or contribution from the Kreniks for any deficiency satisfied by the Swansons.

Swanson's contention is that, upon Rush and Luther's assumption of the deed of trust in 1983, she and the Kreniks became co-sureties. Her claim is based largely on Paragraph 10 of the 1983 Rush and Luther assumption agreement, which states:

> Rush and Luther, [the Kreniks] and Marie O. Swanson, whether principal, surety, grantor, endorser or other party hereto, *agree to be jointly and severally bound ...* and expressly agree that the Note or any payment thereunder may be extended from time to time and consent to the acceptance of further security including other types of security all without in any way affecting the liability of said parties.

(Emphasis added). Swanson argues that this paragraph demonstrates the Kreniks' express consent to become joint debtors with her on the Alaska Federal deed of trust.

Swanson misinterprets this provision. Indeed, the fact that Paragraph 10 also binds Rush and Luther as jointly and severally liable with Swanson and the Kreniks would defeat Swanson's interpretation of the clause. We conclude that the language of Paragraph 10 establishes the Kreniks' agreement to be jointly and severally bound with all assuming grantees *as to the mortgagee,* Alaska Federal, in the case of a default on the loan. It does not, however, establish any relationship or hierarchy among the successive grantors regarding contribution or indemnity.

The relationship between Swanson and the Kreniks is clarified in Paragraph 13 of the 1983 Rush and Luther assumption agreement, which states:

> [The Kreniks] and Marie O. Swanson agree that their present liability under the Note and Deed of Trust *shall not be impaired, prejudiced or affected in any way whatsoever by this Agreement* or by sale or conveyance of said premises, or by the assumption by Rush and Luther of the Note and Deed of Trust or by any subsequent change in the terms, time, manner or method of payment of said indebted-

ness, or any part thereof contracted by [Alaska Federal] and Rush and Luther or the transferees of Rush and Luther, whether or not such changes or transfers have been consented to by [the Kreniks] and Marie O. Swanson.

(Emphasis added).

The unambiguous terms of this provision indicate that the 1983 assumption agreement did not alter Swanson's obligations to the Kreniks under the previous assumption agreement. Accordingly, Swanson and the Kreniks did not become cosureties in 1983 as Swanson maintains. As between themselves, they remained principal obligor and surety, respectively. Therefore, with respect to Rush and Luther, who became the principal obligors, Swanson and the Kreniks became surety and subsurety, respectively. In this relationship, the Kreniks' liability on the deed of trust remains one step removed from that of Swanson, as it was under their original agreement. Therefore, Swanson is liable for the deficiency resulting from Rush and Luther's default on the deed of trust, and she is not entitled to contribution from the Kreniks. We find that, absent some express agreement to the contrary, a second grantee's purchase of property and assumption of a mortgage obligation does not modify the surety-principal obligor relationship created between the mortgagor and the first grantee in their previous transaction.

Swanson contends that the Restatement of Security supports her claim of cosuretyship, since it establishes a presumption of cosuretyship where two sureties agree to be bound for the same duty. Under the Restatement, cosuretyship is defined as

> the relation between two or more sureties who are bound to answer for the same duty of the principal, and who as between themselves should share the loss caused by the default of the principal.

Restatement of Security § 144 (1941). Subsuretyship is defined as

> the relation between two or more sureties who are bound to answer for the same duty of the principal where one, the principal surety, in respect of the other, the

subsurety, has the whole duty of performance. Restatement of Security § 145 (1941). To determine which relationship exists between two sureties in a given case, the Restatement provides in part: "The sureties are cosureties in the absence of agreement or stipulation of either to the contrary or of duties or equities imposing the principal liability on one of them." Restatement of Security § 146(b) (1941). Swanson maintains that she and the Kreniks became cosureties pursuant to Section 146(b) when they acknowledged joint liability to Alaska Federal in the Rush and Luther assumption agreement. .

Given our conclusion that Swanson and the Kreniks' joint liability to Alaska Federal does not compel their joint liability as to each other, we reject this contention. Swanson undertook a contractual duty to pay the mortgage debt in the Kreniks' stead when she executed the first assumption agreement with the Kreniks. The Rush and Luther assumption did not alter this duty. Swanson's preexisting duty to the Kreniks therefore imposes primary liability on her as the principal surety. *See* Restatement of Security § 146(a) (1941) (sureties may conclusively determine their relationship by agreement).

■ The Iowa Supreme Court's decision in *Security Trust & Savings Bank v. Gallup,* 195 Iowa 243, 191 N.W. 996 (1923), supports our conclusion here that a subsequent assumption of mortgaged property does not alter the basic relationship between a previous mortgagor and grantee. In *Security Trust,* as in the present case, mortgaged property was transferred to successive grantees, and both the first and second grantees explicitly assumed the mortgage obligation. As here, the second grantee defaulted. *Id.* 191 N.W. at 997. The Iowa Supreme Court examined the rights and relationships between the original mortgagor and the successive grantees to the property. It concluded that, upon his assumption of the deed of trust, the second grantee became primarily liable for the entire debt as the principal obligor, and the original mortgagor and first grantee became liable as sureties in inverse order. *Id.* Thus, as between the original mortgagor and the first grantee, the grantee

remained a principal and the mortgagor a surety. They did not become cosureties. *Id.*

Commentators have similarly observed that, where there is a series of conveyances accompanied by a chain of assumptions, "the liability for the mortgage debt is cast upon the grantees in the inverse order of assumption." Milton R. Friedman, *Discharge of Personal Liability on Mortgage Debts in New York,* 52 Yale L.J. 771, 774 n. 13 (1943); *see also* Frederic P. Storke & Don W. Sears, *Transfer of Mortgaged Property,* 38 Cornell L.Q. 185, 198 (1953) (In an assumption chain, any grantee is a surety for subsequent grantees and a principal for earlier grantees.). This general rule is consistent with basic principles of contract law governing assumptions. *See* 2 Samuel Williston, *A Treatise on the Law of Contracts* § 386, at 1039 (Walter H.E. Jaeger ed., 3d ed. 1959) (Each assuming grantee makes "a valid contract to pay the mortgage, which he cannot abrogate by selling the premises, though he may get such protection as any promise to assume the mortgage made by a subsequent grantee can give."). The cases on which Swanson relies do not support her assertion that a mortgagor and an assuming grantee necessarily become cosureties when a second grantee, in turn, assumes the mortgage debt. *See Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.,* 166 Ariz. 500, 803 P.2d 911 (App.1990); *Matthews v. Saleen,* 812 P.2d 1186 (Colo.App.1991); *Moss v. McDonald,* 772 P.2d 626 (Colo.App.1988); *Seronick v. Levy,* 26 Mass.App.Ct. 367, 527 N.E.2d 746 (1988); *Fluke Capital & Management Servs. v. Richmond,* 106 Wash.2d 614, 724 P.2d 356 (1986); *First Interstate Bank v. Nelco Enters., Inc.,* 64 Wash.App. 158, 822 P.2d 1260 (1992).

Lastly, we are unpersuaded by Swanson's argument that the equities of this case mandate a finding of cosuretyship. *See* Restatement of Security § 146(c) (1941) ("A surety is a subsurety if he has so stipulated ... except to the extent that his stipulation will inequitably increase the obligation of another surety."). In our view, the equities in the present situation fall on the side of the Kreniks. As original mortgagors, they had no real influence over their grantee's decision to con-

vey the property to a second grantee, or over the selection of that grantee. They did not stand to directly benefit from the transfer. Their only real involvement in the transaction consisted of a reacknowledgement of their underlying obligation to Alaska Federal, so that the transfer could be accomplished. While it is unfortunate that Swanson is faced with a substantial obligation in this case, it would seem patently unfair to actually enlarge the Kreniks' original liability under the 1981 assumption agreement simply because Swanson transferred the property to a second grantee.

## IV.

We conclude that upon Swanson's conveyance of the mortgaged property to Rush and Luther, the Kreniks became a subsurety to Swanson. We reject Swanson's cosurety theory as contrary to the terms of both the 1981 and 1983 assumption agreements, and we find that no equitable principle requires the abrogation of the Kreniks' express contractual rights.

The decision of the superior court is AFFIRMED.